MICHAEL PLANZ vs. BOSTON AND ALBANY RAILROAD
COMPANY.

Hampden.    September 27, 1892. — November 23, 1892.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Railroad — Trespasser — Contributory Negligence —
Action.*

A person riding unlawfully on a freight car of a railroad train is not a passenger,
and the railroad corporation, as a common carrier, owes him no duty.

Although a person riding unlawfully on a freight car of a railroad train is a tres-
passer, the servants of the railroad corporation have no right recklessly and
wantonly to inflict an injury upon him.

As a freight train composed of both box cars and open cars, some of the latter of
which contained coal, passed a station slowly, a man got upon one of the open
cars and sat on the coal, intending to ride to a certain city.  He knew that he
had no right to ride on the train, and believed that he was liable to be arrested
for doing it.  After riding a few miles, he was discovered by a brakeman on the
top of the adjoining box car, who ordered him to get off the train just as it
started after having made a stop.  He did not obey the order, whereupon the
brakeman repeated it, threatening to throw him off, and at the same time raising
a club which he held in his hand.  After remonstrating with the brakeman, and
requesting him to stop the train so that he could get off in safety, upon the
brakeman's repeating his threat and making a movement towards him with the
club upraised, he attempted to get off the car, the train then going from eight to
ten miles an hour, down grade, and was injured.  *Held,* that his acts so far con-
tributed to cause his injury as to preclude him from maintaining an action
therefor against the railroad corporation.

TORT for personal injuries.  Trial in the Superior Court,
before *Dewey,* J., who, at the plaintiff's request, reported the
case for the determination of this court, in substance as follows.

The plaintiff testified that he was born in Bavaria, and had
been in this country about three and a half years, three years of
which time he lived in Syracuse, New York, where he worked
at his trade of shoemaking; that he left Syracuse on October
3, 1891, intending to go to Boston in search of employment at
his trade, and arrived in Huntington the next day, which was
Sunday; that in the afternoon of the same day, while at the
defendant's station in Huntington, a freight train of the defend-
ant passed slowly by without stopping, going in the direction of
Boston; that this train was composed of an engine and ordinary

box or house cars and open coal cars, to the number of twenty or more in all; that, as the train passed, two tramps, whom he first met at the station, got upon the train, each taking a different car, and he then climbed upon one of the coal cars which had coal on it, and was back of the ones occupied by the tramps, and sat down on the coal, intending to be carried on his way to Boston; that in a few minutes afterwards both of the tramps walked back on the train and occupied the same car with him; that the next car behind the one on which he and the two tramps were riding was a box car, and in the rear of that were several more cars of the same kind belonging to the train; that after riding between three and four miles, and when about one quarter of a mile westerly of the station at Russell, he heard some one towards the rear part of the train shout, "Get off, fellows, or I will throw you off"; that he looked around, but saw no one; that, upon hearing the same order repeated, he looked around again, and found that it came from a brakeman on the train, whose name he had since learned was Walton, whom he then saw standing above him on the top of the adjoining box car, which was back of the car occupied by the plaintiff and the two tramps; and that the brakeman again repeated the order to get off, or he would throw them off, at the same time raising a club which he held in his hand, whereupon the two tramps immediately jumped off.

The plaintiff further testified that he was afraid of the brakeman, and afraid to get off on account of the speed of the train, and remonstrated with the brakeman, and said to him, "I can't get off, the train go too fast for me, I am afraid," and asked him to stop the train so he might get off; that the brakeman replied, "Never mind, get off or I will throw you off"; that the plaintiff again said he was afraid to get off, because the train was going too fast, and entreated him to stop the train and he would get right off; that the brakeman thereupon replied, "I will throw you right off," at the same time raising the club which he held in his hand, and making a move as if to come down upon the plaintiff, by putting one foot on the steps leading from the box car where he was standing; and that thereupon the plaintiff attempted to alight from the car, and in so doing was thrown down and drawn under the wheels of the

car, which crushed his right leg so that it became necessary to amputate it, which was done as soon as surgical aid could be summoned.

The plaintiff, on cross-examination, testified that on his way from Syracuse he rode from Albany to Chester concealed in a freight car of another train of the defendant without paying his fare, through the connivance of another brakeman of the defendant; that when he arrived at Chester he had two dollars and twenty-five cents in his pocket, and that he spent no money there; that he walked from Chester to Huntington on the railroad track; that, after leaving Huntington, the train stopped about one quarter of a mile westerly of Russell to let another train pass, so that the plaintiff might then have got off if he had desired, but he did not want to get off, and intended to ride clear through to Boston; that this stopping of the train occurred before he was ordered off; that the first time he was ordered to get off was just at the time when the train started; that he knew he had no right to ride on this train; and that he thought and believed that he was liable to be put in the lockup for it.

It was in evidence that, when the plaintiff got off, the train was going from eight to ten miles an hour, down grade.

It was admitted that Walton was a brakeman on the train in question at the time of the injury complained of; that his duties and powers were those of an ordinary freight brakeman; and that there was a conductor on the train, but his exact position on the train did not appear.

After the plaintiff had rested his case, the defendant asked the judge to rule that the action could not be maintained. The judge so ruled; and directed the jury to return a verdict for the defendant. If the ruling was right, judgment was to be entered on the verdict; otherwise, the case was to stand for trial.

*G. Kress & S. Clark*, for the plaintiff.

*G. M. Stearns*, for the defendant.

KNOWLTON, J. The plaintiff was not a passenger, and the defendant as a common carrier owed him no duty. The cases which hold that a carrier of passengers is always liable for wilful and wanton injuries inflicted by its servants upon those who are being carried by it are not applicable. *Simmons* v.

*New Bedford, Vineyard, & Nantucket Steamboat Co.* 97 Mass. 361. *Bryant* v. *Rich,* 106 Mass. 180.

The plaintiff rightly contends that, although he was a tres-passer, the defendant had no right recklessly and wantonly to inflict an injury upon him, and rests his case on the doctrine that a master is liable for the wilful acts of his servants, com-mitted within the general scope of their employment, as well as for their acts of negligence, even if these acts are not previously authorized or subsequently ratified by him.

It does not expressly appear to have been within the scope of the brakeman's employment to order persons found riding on the train without leave to get off, and it has sometimes been held that an ordinary brakeman of a freight train has no authority to give such an order. *Marion* v. *Chicago, Rock Island, & Pacific Railway,* 59 Iowa, 428. *Towanda Coal Co.* v. *Heeman,* 86 Penn. St. 418. But in considering this case we prefer to assume in favor of the plaintiff, without deciding, that it was a question of fact for the jury whether Walton, from his general employ-ment as a brakeman, had authority to represent the defendant in ordering a trespasser to leave the train. If he had, the defendant is liable for his negligence or misconduct in regard to the time or manner of doing it.

If we also assume that when the plaintiff jumped from the car the train was going so fast as to make it negligent and wrongful for the brakeman to attempt then to force him from the train, we reach the question whether there was any evidence that the plaintiff was in the exercise of due care. The plaintiff admitted that he rode from Albany to Chester concealed in a freight car of another train of the defendant, without paying his fare, through the connivance of another brakeman of the defendant; that on the day of the accident he and two tramps got upon the train, each taking a different car; that he intended to ride to Boston, and that he knew he had no right to ride on this train, and believed that he was liable to be put in the lockup for doing it. On his own confession, he was not only a trespasser, but was attempting to obtain a ride on a railroad train without paying for it. When he got upon the car he knew that the train was not adapted to the conveyance of pas-sengers, and that there were peculiar risks in attempting to ride

there.  He perfectly understood that those in charge of the train, if they discovered him, would be likely to try to prevent his riding on it.  He knew he was acting in defiance of the defendant's rules, and he thought he was subjecting himself to the risk of punishment by the courts if discovered and arrested.  He was grossly neglectful of his duty in trying to ride as he did.  His act was one which was almost certain to lead either to a hasty escape from the train when he was discovered, or to an altercation with the conductor or brakeman.  He knew that the cars were not provided with conveniences for alighting easily and safely; he also knew that it was not easy to accommodate the motions of the train to one who had occasion to get on or off, and he knew that he would probably be required to get off under circumstances of greater or less inconvenience.  He voluntarily and without justifiable cause put himself in a position to encounter dangers of the kind that caused his injury.  He testified that, when the brakeman first told him to leave the train, it had stopped, and was just starting.  At that time he doubtless could have got off without danger.  But he wilfully disobeyed the order, and persisted in staying.  If, afterwards, the speed of the train was such as to make it wrong for the brakeman to try to have him jump off, the danger which he incurred was no different in kind, if greater in degree, than that which he might reasonably have anticipated, and it cannot be said that his conduct in getting on the train under such circumstances, and in remaining after he was first told to get off, was not a contributing cause of the accident.

The order to get off was addressed to him as a wrongdoer, and the fact that he was a wrongdoer would be likely to give force to the order, and help to cause the injury.  If he had been on the car rightfully, he would not have feared the brakeman's threat, and would have known that he was in no danger of bodily injury before he could assert his rights and explain his situation.  It is fairly to be inferred that his consciousness of his fault, and his fear of punishment under the law, operated with the order, and induced him to take the risk of jumping.  It is not as if he had been put off the train by the use of physical force when it was going rapidly.  Expulsion of that kind would be so unexpected that his attempt to ride, against

the rules of the defendant, would not have been the cause, but merely a condition, of a fall which caused an injury; and for such a reckless and dangerous act of its servant the corporation would be liable. But in the present case, although the constraint of fear was put upon him, he could choose either to jump or to remain where he was, or to pass to the empty platform cars, which were next forward of the coal car on which he was riding. The brakeman was on a box car behind him, where he could not immediately inflict injury upon him if he tried. If it was a negligent and wrongful act for the brakeman to order him off the train at that time in the manner described, it was negligent for him to jump off when there was nothing to prevent his going forward, and, for a considerable time at least, keeping away from the brakeman. Moreover, in proving his case he was obliged to show his own wrong to make the brakeman's language intelligible, and to explain his fear of the language and his conduct in jumping. See *Newcomb* v. *Boston Protective Department*, 146 Mass. 596.

He showed that he was where he knew he had no right to be, and, presumably, his consciousness of wrongdoing was one of the causes which made him fear to remain when he was commanded to go. In this part of the case the burden of proof is on the plaintiff, and there is no evidence tending to show that his unlawful conduct in riding on the car was not a contributing cause of the accident. It was inseparably connected with the conduct of the brakeman in furnishing one of the motives which determined his choice to jump, rather than to remain or go forward.

It is argued that the plaintiff's act of jumping must be held, as matter of law, to have been so far voluntary, that, if he had been free from previous fault, he must take the consequences of it. See *Lovett* v. *Salem & South Danvers Railroad*, 9 Allen, 557. We do not decide this. But if in the conduct of the brakeman there was such constraint upon him as to furnish an excuse for the assumption of some risk, had no other element entered in, we still have these unlawful acts of the plaintiff, which naturally would reinforce and give effect to the words of the brakeman, and in that way contribute to the injury.

We are of opinion that the jury were rightly directed to return a verdict for the defendant.

*Judgment on the verdict.*