NOVEMBER TERM, 1894. 101

The Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co. v. Redding.

No. 17,005.

## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. REDDING.

NEGLIGENCE.—*Willful Injury.*—*Child Jumping upon Moving Train.*— *Failure to Stop Train.*—Where a boy eight years of age, standing by a railroad track as a freight train passes through a town on a sharp up-grade, at a speed of eight miles an hour, is warned by the engineer to get away, and steps back, but comes up to the train again and seizes the mounting appliance attached to the end of a car, and hangs on, which act is seen by the fireman, who makes motions warning the boy to get off, in doing which he falls under the moving train and is injured, the railroad company is not liable, as the failure to stop the train and remove the boy—which it is not shown could have been safely done—does not amount to willfulness.

PRACTICE.—*Evidence.*—*Bill of Exceptions.*—The evidence will not be considered when it appears that it is not brought into the record by a proper bill of exceptions.

From the Delaware Circuit Court.

*C. H. Burchenal* and *J. L. Rupe*, for appellant.
*Brown & Brown* and *J. M. Morris*, for appellee.

HOWARD, J.—From the special verdict in this case, it appears, that on the 25th day of September, 1891, the appellant company ran a train of cars, in a southeasternly direction, through the city of New Castle, the train consisting of a locomotive engine, tender, twenty-seven loaded box cars, and a caboose. It was a through freight, passing through the town between four and five o'clock in the afternoon, and without making any stop at the depot.

The appellee was at the time eight years and five months old, and lived in the town with his father and mother. The father was on this day engaged at work as a carpenter at a point several miles distant from the town.

102    SUPREME COURT OF INDIANA,

The Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co. v. Redding.

The boy had been at school during the day, and returned home after dismissal of school, about half past three o'clock.   About four o'clock his mother, who was engaged at her trade as seamstress, permitted him to go out and ride upon a wagon for a distance of a square and a half, with directions to then return home.   Instead of returning as directed, appellee wandered on for some squares, until he crossed to the south side of the railroad track, where he stood as said freight train came along.

As the engine approached and passed the place where appellee stood, the engineer noticed him and said to him: "Go away from there."

The special verdict then continues:

"That the plaintiff, George Redding, then went to a point about twenty feet east of the east side of Byer street, on the south side of the track, and as the fourth or fifth car of said train to the rear of the engine passed him, he seized hold of an iron attached on the side near the end of said car and drew himself up and rested his right knee on an iron loop or half ring attached to the sill of the car, and his left foot on the lid of the grease box of the truck, in which position he rode on said car a distance of three hundred feet.

"At the time the plaintiff so seized hold of said car, the said train was running at a speed of eight miles an hour, and on a sharpe up-grade;  that at the time the plaintiff so seized hold of and hung upon said car, the fireman of said freight train, James R. Muckridge, was standing within three feet and in touching distance of the engineer, and saw plaintiff get upon said car, and saw him hanging thereon, and ride thereon to the place where he fell off, and could easily have called the attention of the engineer to the situation and condition of the plaintiff.

"And during the time that the plaintiff was so upon

said car the said Muckridge made backward and forward motions with his right arm and hand, toward and at the plaintiff, which frightened and caused the plaintiff to jump off the car, and whilst the car was so in motion as aforesaid, and in alighting the plaintiff fell under said car, with his left leg across the rail of said railroad, and the car wheels passed over it, and so crushed and mutilated it as to leave it hanging together with the shreds of flesh and the sinews; that amputation was made necessary, and soon thereafter, on said day, had; that said train could have been easily stopped within a distance of four or five car lengths before reaching the point of the accident after the plaintiff was seen upon said train by said Muckridge; that the average length of the cars of said train was thirty-three or thirty-four feet; that as soon said Muckridge saw the accident, he made the remark to the engineer, standing at his side: 'We have got him,' or 'We have killed him'; that no effort was made to stop or check the speed of said train whilst the plaintiff was so hanging upon said car; that at the time the plaintiff got upon said car, he did not fully realize or appreciate the danger or peril of his act."

We do not think that this verdict finds facts sufficient to entitle appellee to judgment.

It first appears that he was a trespasser upon appellant's train; not a technical trespasser simply, but a trespasser in direct violation of the order of the engineer who saw him standing near the moving train, and said to him in warning: "Go away from there." He was also on the train in disobedience to his mother's command, since she told him to return home after his ride upon the wagon. His climbing upon a moving car was moreover a misdemeanor under the statutes of the State. Section 2290, R. S. 1894 (section 2169, R. S. 1881).

This is not like the case of *Louisville, etc., R. W. Co.*

v. *Sears*, 11 Ind. App. 658, where a boy nearly eight years of age, playing upon the street, slipped, and without fault on his part, was accidentally thrown upon the track, where he was run over and his legs taken off by a passing train.

The only question for decision in the case at bar, taking into consideration the tender years of the appellee and the fact that he did not realize or appreciate the danger and peril of his act, is, whether the appellant was or was not guilty of willful or wanton neglect of duty in not stopping its train and removing the boy when his danger was discovered.

In *Railroad Co.* v. *Kassen*, 49 Ohio St. 230, a passenger fell off the rear of one train and lay stunned upon the track, where a train following in an hour afterwards ran over and killed him. The employes of the first train, though informed that the man had fallen off, refused to stop the train and take him up or to give notice to the crew of the following train, so that they might not injure him; and for such willful and inexcusable neglect of duty and disregard of the dictates of our common humanity, the company was rightfully held answerable in damages.

In the case before us, however, it does not appear, from the facts found, that the boy was necessarily in danger. He had climbed upon the train, apparently at the same place provided for the use of employes in mounting the cars; and to the fireman who saw him there it may not have seemed so dangerous a situation as in fact it was. The fireman and the engineer, both of whom apparently knew of the presence of the boy clinging to the box car, may have thought that as he had got there while the train was in motion, he might hold on there in safety; or that he might jump off with even greater ease and safety than he had jumped on. At

least it does not seem clearly a case of criminal careless-
ness on the part of the train employes to have continued
the train in motion on the "sharp up grade" on which
it was then moving.    It was not a suitable place to stop
a loaded freight train.    Besides, it may have been dan-
gerous to do so.

The verdict shows that the train could have been
stopped in a few car lengths, but it does not find that
this might safely be done.    A passenger train, as in the
Ohio case which we have cited, might be closely follow-
ing this freight; and, for all that appears, up this same
steep grade.    If that were so the stopping of the freight
train might be attended with great danger to passengers
and to the crews of both trains.    In addition, it is not
clear that the stopping of the train might not have
jerked the boy off even more quickly than he jumped off
himself.

It is found in the verdict that the forward and back-
ward motion of the fireman's arm frightened the appel-
lee, so that he jumped off.    This we think must be re-
garded as a mere conclusion.    Appellee was not fright-
ened by the warning of the engineer, when told to keep
away from the moving train.    His mounting the train
seems at least as dangerous an act as was the dismount-
ing.    The action in the last case may have been due
quite as much to the boy's own consciousness of wrong
doing as to any fear caused by the motions of the fireman's
arm.    The motions, besides, may have been by way of
caution quite as much as threat.    They may have meant
hold on tight, quite as well as jump off.

Appellee, notwithstanding his tender years, was un-
questionably quick, active and unusually daring.    The
trainmen, accustomed themselves to take such risks as
the boy was taking, may have honestly believed him to
be in no great danger.    He was a wrong-doer, and it is

not clear that they were guilty of willfully injuring him. If the facts are correctly found by the jury, we do not think the company is liable. See *Planz* v. *Boston, etc., R. R. Co.*, 157 Mass. 377.

Both appellant and appellee refer to the evidence in discussing the verdict, but the evidence is not in the record. The clerk does not show that a bill of exceptions containing the evidence was ever filed in his office. It is perhaps shown that a longhand manuscript of alleged evidence was filed in the clerk's office. But the longhand manuscript is not a bill of exceptions. It should, after filing in the clerk's office, be embodied in a bill of exceptions; and this bill of exceptions, with the longhand manuscript so embodied therein, should, after having been presented to and signed by the judge, within the time given, be filed in the clerk's office. All this, besides, should appear from the record, and over the certificate and seal of the clerk.

We need not, perhaps, presume that a court stenographer knows how to make up a bill of exceptions; it is not his duty to do this. He is sworn simply to take down and transcribe the evidence, rulings, etc. However this may be, it is the duty of the appellant to bring a correct record to this court; and our decisions can not be made up from an examination of papers which form no part of the record.

We are of opinion that in this case justice may more certainly be attained by granting a new trial than in any other way.

The judgment is therefore reversed, with instructions to grant a new trial.

MONKS, J., took no part in the decision of this case.

Filed Feb. 27, 1895.