DANIEL W. SHEA vs. DAVID B. GURNEY & another.

Plymouth.    October 16, 1894. — March 1, 1895.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Licensee and Volunteer — Action.*

A boy fourteen years old went upon premises used as a saw-house and box factory, solely for his own amusement, and, while assisting a workman who was sawing slabs with a circular saw, the upper part of which was exposed, by taking, in accordance with the latter's directions, the pieces of wood from the saw as they were cut and throwing them upon the floor or into a wagon, was injured by coming in contact with the saw in reaching across it to get a piece of wood. He had been accustomed to visit the premises, and to amuse himself by riding in the wagons and by assisting the workmen, in the presence of the owner, who had himself on one or two occasions directed him to load some boxes; and shortly before the accident happened the owner saw him helping to load slabs into a wagon to be taken to the saw-house. *Held,* in an action against the owner for his injury, that he was only a licensee and volunteer, and the defendant owed him no duty except to abstain from injuring him wantonly; and that the action could not be maintained.

TORT, against David B. Gurney and Charles P. Slack, co-partners as C. P. Slack and Company, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendants.    Trial in the Superior Court, before *Bishop,* J., who allowed a bill of exceptions, in substance as follows.

The defendants at the time of the injuries complained of, and for some time before, were the proprietors of certain mill property in Whitman, where all the parties resided.  One of the buildings was a large wooden box factory, on the south side of which and adjoining it was a small house, called a saw-house, one story in height.   Entrance was had to this saw-house by two doors, one on the south, the other on the west side, each about five feet wide.   In this house was a bench or framed structure standing about three and a half feet from the floor, on the east end of which revolved a circular saw two feet in diameter, the lower half, up to within two inches of the centre or arbor, being covered on the outside by slabs or thin boards, and all above being exposed.   In front of this bench was a trough or " rocker," in which the wood to be sawed was placed.   The

operator at the saw, after placing the wood in position, pushed the rocker from him, bringing the wood extended over the right end of it against the saw, thus severing the stick. This rocker was held in position and prevented from falling to the floor by a chain attached to the lower half of it and to the bench.

The plaintiff, when injured, was engaged in taking the pieces of the wood from the saw as they were cut, and throwing them to the floor, or into a wagon standing at the door; and the injury was caused by his wrist coming in contact with the saw while attempting to take the end of a stick of wood from the rocker after the last cut in the stick had been made.

The plaintiff testified that he was fourteen years old, and attended school in Whitman; that he lived within a stone's throw of the defendants' mill property; that on September 9, 1893, which was Saturday, he went to the mill-yard in the afternoon with another boy named Bagley; that they jumped upon a team driven by William Arsenal, an employee of the defendants, helped him to load some slabs, and rode with him while delivering them; that they rode back again and helped to load some edgings; that before the edgings were loaded, the defendant Slack came out of the factory and gave orders to Arsenal where to deliver them; that the plaintiff was on the wagon at the time, and Slack was about fifteen feet away; that the edgings were delivered, and they returned and loaded up again with slabs, both boys helping; and that the team was driven to the saw-house at the west door, and the slabs were thrown into that door where they could be reached, and the wagon was then placed at the south door of the saw-house.

The plaintiff further testified as follows: "We were on the wagon, and Arsenal commenced sawing slabs; after he had sawed and got a pile on the ground, he motioned to me to pick up the slabs and throw them into the wagon. I jumped off the wagon and began to load the slabs, Bagley helping. After I took the pile of slabs off the floor, I commenced taking them off the stand (rocker) that was pushed against the saw to saw the slabs. After Arsenal put a slab on, when it came to the last piece, he left it on the stand for me to take off. As I was reaching for it, my hand came in contact with the saw. I had been working at the saw about fifteen or twenty minutes. The

other pieces would extend out a little from the saw. I took hold of them when they were sawed off and threw them into the wagon. The end piece would be left on the stand that was pushed up against the saw. I reached for the piece that was left on the stand. When Arsenal wanted to saw off a piece he pulled the rocker back, and when he started to saw again he would push the rocker up. I put my hand over to reach the last piece in front of the saw."

The plaintiff also testified that he had been in and about the mill frequently before this, and saw Slack at that time more than once; that he was helping the men round there nearly all day; that there were other boys there; that he had been there frequently in the summer vacation, a dozen or fifteen times, and saw Slack almost every time; that he had worked in the saw-house two or three times before, within two months, taking wood from the rocker; that he had seen Slack each time while working in the saw-house, at the door, and he said nothing to him; that he had worked with Slack loading boxes a dozen times that summer; that he did this for a ride; and that there were no notices about the place.

Upon cross-examination, the plaintiff testified that one Randall, who was in the employ of the defendants, never ordered him off the premises; that Slack must have seen him at work when he saw Slack; and that on the day of the accident he went upon the premises for the purpose of getting a ride on a wagon.

The plaintiff continued his testimony as follows: "Slack has seen me about the saw almost every time I was there, and taking pieces away from it; he has stood at the door while I was there; never knew Slack to order the boys out of the yard. I had seen this saw run a good many times; didn't ever think whether it would hurt if the hand was put against it; had seen it cut wood, slabs, and hard wood; knew it would cut off a stick in an instant; knew it ran pretty fast; had seen it started and stopped. I thought you would have to push the wood up against the saw in order to have it cut off; thought you wouldn't be likely to put your hand against it; knew if you touched it while running, it would cut you; thought if you put your hand out into the rocker trough to take the piece out, you wouldn't get

your hand against the saw; thought I could keep away from the saw easy enough; was not in a hurry when I reached for it; did n't do it any more carelessly than I did before; I reached for the last piece with both hands. I have seen Gurney there once."

The plaintiff also illustrated to the jury his position with reference to the saw at the time of the injury, and showed that he was standing side of the saw, facing towards the rocker, so that he had to reach forward and diagonally across the saw in order to reach the piece of wood in the rocker.

Edward Randall testified as follows: "I worked for the defendants from February to August, 1893, and was about the defendants' premises up to the time of the accident; knew the plaintiff, and saw him two or three times each week in July and August; he has worked with me loading boxes from the mill; have seen him in the saw-house throwing wood into a wagon; took wood from the saw; has done this while I worked at the saw, in July or August; have seen Slack in the yard when the plaintiff was working about there, and when at work in the saw-house, more than once; twice or three times Slack was ten or twelve feet from the saw-house; Slack has been about there when the plaintiff was working loading boxes; have heard him say to the plaintiff, 'Come, Dannie, hustle these boxes right out.' The plaintiff has ridden with me when Slack was there."

On cross-examination the witness testified that, before the accident, Slack had told him and the other drivers in his employ that he would discharge the first man whom he saw having a boy on his team; that the witness repeated this to the plaintiff; that he had heard Slack tell boys to keep off the premises, but could not say whether the plaintiff was one of the boys; and that he knew Slack had seen the plaintiff in the saw-house. Several witnesses testified that they had seen the plaintiff at work in the saw-house, and also loading boxes in the yard, Slack being present on each occasion.

The judge ruled, at the defendants' request, that the action could not be maintained; and directed the jury to return a verdict for the defendants. The plaintiff alleged exceptions.

*L. E. Chamberlain,* (*H. Kingman* with him,) for the plaintiff.

*R. O. Harris,* (*C. H. Edson* with him,) for the defendants.

MORTON, J. The plaintiff was not in the employ of the defendants. He was not induced nor invited by them to enter their premises. He did not go there upon any matter of mutual interest to him or them, or upon any matter of business. He went there solely for his own amusement. At different times before the accident he had assisted workmen, including the one whom 'he was helping when the injury occurred, under such circumstances that the jury would have been warranted in finding that he was doing it with the knowledge of one or both of the defendants. Once or twice, as the testimony tended to show, when about the premises, he had been directed by Slack to load some boxes. And in the same afternoon, shortly before the accident happened, the testimony tended to show that Slack saw the plaintiff helping to load slabs into a wagon to be taken to the saw-house.

But as between the plaintiff and the defendants, notwithstanding these circumstances, he was at the most only a licensee and volunteer, visiting the premises to amuse himself by riding in the teams and by assisting the men. And as such the defendants owed him no duty except to abstain from injuring him by active misconduct on their part. *Zoebisch* v. *Tarbell,* 10 Allen, 385, 386. *Severy* v. *Nickerson,* 120 Mass. 306. *Johnson* v. *Boston & Maine Railroad,* 125 Mass. 75. *Galligan* v. *Metacomet Manuf. Co.* 143 Mass. 527. *Metcalfe* v. *Cunard Steamship Co.* 147 Mass. 66. *Reardon* v. *Thompson,* 149 Mass. 267. *Daniels* v. *New York & New England Railroad,* 154 Mass. 349. *Billows* v. *Moors,* 162 Mass. 42.

We do not mean to intimate that the plaintiff was in the exercise of due care, even if he were to be regarded as the servant of the defendants.

The direction by the workman, Arsenal, does not help the plaintiff. *Flower* v. *Pennsylvania Railroad,* 69 Penn. St. 210. *New Orleans, Jackson, & Great Northern Railroad* v. *Harrison,* 48 Miss. 112. *Howard* v. *Hood,* 155 Mass. 391.

*Exceptions overruled.*