LEVI HUDSON, administrator, *vs.* LYNN AND BOSTON RAILROAD COMPANY.

Essex.    November 8, 1900. — February 28, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

The conductor of an electric car lawfully may eject a passenger whose conduct is such as to justify an inference of his intoxication and cause a just apprehension of acts of impropriety, rudeness or disturbance on his part. The conductor need not wait until some act of this kind has been committed.

Pub. Sts. c. 112, § 197, providing that a traveller who does not pay his fare "shall not be entitled to be transported for any distance, and may be ejected from a street railway car" applies to electric cars although it was enacted before their introduction.

The conductor and motorman of an electric car, having sufficient cause lawfully to eject a certain passenger, lifted him and carried him out of the car apparently in a state of intoxication and left him on a dark and rainy night on a lonely and unlighted road occupied in part by the track of the street railway, over which cars were passing in both directions at intervals of fifteen minutes, at a

place where there were no buildings or shelter and three minutes distant from a place where there were buildings and shelter.  *Held,* that although the person so ejected ceased to be a passenger when ejected, he had a right of action for assault, which survived to his administrator, against the railway company for the acts of its servants in exercising their right of ejection in an improper manner and without due care.  Whether, if the person thus ejected was run over and killed by a car of the railway company in consequence of his exposure to danger by reason of such ejection, his administrator could maintain an action for loss of life under St. 1886, c. 140, *quære.*

TORT to recover damages for the loss of life of the plaintiff's intestate by reason of being struck and run over by one of the defendant's cars ; and also for an assault alleged to have been committed upon the plaintiff's intestate in being ejected from a car of the defendant by its agents and servants.  Writ dated September 28, 1898.

At the trial in the Superior Court, before *Stevens,* J., the plaintiff presented evidence of which the substance is stated in the opinion of the court.

At the close of the plaintiff's evidence, on motion of the defendant, the judge ruled that the action could not be maintained, and ordered the jury to return a verdict for the defendant.

The jury returned a verdict as directed ; and the plaintiff alleged exceptions.

The case was argued at the bar in November, 1900, and afterwards was submitted on briefs to all the justices.

*F. D. Allen,* for the plaintiff.

*H. F. Hurlburt, (D. E. Hall* with him,) for the defendant.

BARKER, J.   The evidence tended to show that on the night of September 7, 1898, Pope, the plaintiff's intestate, took one of the defendant's out bound electric cars in the Boston Subway, paid a single fare, saying as he paid " When I pay my next fare I shall want a transfer to Upper Swampscott line," and was carried as a passenger toward Lynn.   His second fare became payable as the car was passing over the Lynn marshes.   Shortly after paying the first fare he began to act in a manner which would justify the conclusion that he was intoxicated, and before the car reached the point where the second fare was to be paid he was in a sleep or stupor, which the conductor had made several ineffectual attempts to break.   When the conductor came in to collect the second fares Pope was sitting up asleep.

The conductor first took the fares of the other passengers, then came to Pope and shook him several times and tried to wake him up, but he made no response. After this shaking had continued for some time and Pope did not awaken, the conductor stopped the car and the motorman came in and asked what the matter was. The conductor replied, " No matter what he is doing, we will put him off here in the mud; the next time he will know about paying his fare." They then lifted him, carried him out of the car, left him in the road, and the car went on its way.

The night was dark and rainy. The road in which he was left was not lighted and was occupied in part by the defendant's track over which its cars were passing in each direction at intervals of fifteen minutes. Teams were accustomed to use the road at night. There were no sidewalks, the road was through the Lynn marshes, and there were no dwellings, or other buildings, or any shelter in the vicinity. Farther along towards Lynn, three minutes' run of the car distant, were dwellings and shelter.

About half an hour after Pope had been so taken from the car he was on the ground upon the railroad track, and was run over and killed by one of the defendant's cars going toward Boston and run by the same conductor and motorman who had ejected Pope. There was testimony from the motorman of the car which followed that from which Pope was ejected that when this next car passed the locality where Pope had been left the motorman saw a man standing alone against the fence between it and the track, about fifteen minutes after Pope had been ejected. There was no other testimony on the subject of how Pope came to be on the ground on the track when struck by the car.

The action is brought by his administrator, and the declaration has counts under St. 1886, c. 140, to recover for loss of life, and also a count at common law for an assault alleged to have been committed in ejecting him from the car. Upon the evidence introduced by the plaintiff a general verdict for the defendant was ordered, which must be set aside if any of the counts should have been submitted to the jury.

We are of opinion that Pope ceased to be a passenger when

ejected from the car.   Two things had occurred to give the defendant a right to terminate his relation as a passenger.   The first was his conduct, which whether in fact due to intoxication, to the effect of a drug or to illness from some other cause, was such as to justify an inference that it was due to intoxication, and to found a just apprehension that unless he should be ejected, it might result in acts of impropriety, rudeness or disturbance on his part.   The conductor was not bound to wait until some act of this kind had been committed, but could expel the passenger in order to prevent such misconduct as was to be apprehended from a person in his apparent condition.   *Vinton* v. *Middlesex Railroad*, 11 Allen, 304.   *Murphy* v. *Union Railway*, 118 Mass. 228.

The other circumstance which gave the defendant a right to eject him was the fact that he had not upon demand paid the fare for that part of his journey then being made.   The law regulating the rights of passengers upon street railways in this respect is contained in the following clause of Pub. Sts. c. 112, § 197.   " Whoever does not upon demand first pay such toll or fare shall not be entitled to be transported for any distance, and may be ejected from a street railway car."   No doubt this was enacted before the introduction of electric cars, and when most street cars ran on streets where it would be safe to leave a passenger at any time.   But the provision remains unchanged, and governs wherever the railway may be located.   Therefore by the terms of the statute, Pope having not paid his fare upon demand, he was not thereafter entitled to be transported for any distance, and might be ejected from the car.   This having been done, even if in an improper manner, his status as a passenger was terminated, although he may have had a right of action for his damages, if the ejection was effected in a wrong manner.

We are of opinion that it was so effected, and that it was therefore an assault upon his person, and that it gave him, if damaged thereby, a right of action which would survive to the plaintiff, under the provisions of Pub. Sts. c. 165, § 1.   When taken from the car Pope was in a stupor or sleep, unable to take cognizance of surrounding objects, having no power to stand upright or to walk, and with no control of his own body.   To place and leave him in such a condition, in a dark road on a wet

night, at a spot distant from human habitations, near the path of cars and other vehicles, near marshes which adjoined the road on both sides, and with no one to care for or protect him, was an act fraught with imminent danger to him. It fell far short of the duty of the defendant to him as a human being, in that it unnecessarily and wantonly exposed him to great peril to which he would not have been exposed if the right of the defendant had been exercised by its servants in a reasonably humane manner. It was not the due and proper care required of the defendant in the exercise of its right to eject a passenger whose conduct was improper, or who had not paid his fare upon demand. See *Lovett* v. *Salem & South Danvers Railroad*, 9 Allen, 557 ; *Murphy* v. *Union Railway*, 118 Mass. 228.

In the opinion of a majority of the court this requires us to sustain the exceptions, and to send the case back for a new trial. As the evidence may then be different, we do not feel called upon to express an opinion upon the question whether the statutory action can be supported upon the evidence stated in the present bill of exceptions.

*Exceptions sustained.*