# CASES ARGUED AND DECIDED

—— IN THE ——

# SUPREME COURT OF MISSISSIPPI,

—— AT THE ——

## MARCH TERM, 1904.

ALABAMA AND VICKSBURG RAILWAY Co. *v.* DAVID LIVINGSTON.

1. RAILROADS. *Trespasser.* *Freight train.* *Erroneous information.* *Track supervisor.*

   A person is a trespasser, though not a willful one, and not a passenger under an implied contract, who boards a freight train which does not carry passengers, believing from erroneous information given him by the railroad company's supervisor of tracks that he had the right to take passage thereon.

2. SAME. *Ejection.* *Trespasser.* *Cursing and abusing.*

   A railroad company is liable for the misconduct of the conductor of its freight train, which did not carry passengers, if he curse and abuse a trespasser on ejecting him from the train.

3. SAME. *Damages.* *Excessive verdict.*

   Where plaintiff boarded a freight train erroneously believing that he had a right to travel thereon, and was expelled by the conductor, between stations on a stormy night, with abuse and cursing after an offer to pay his fare, a judgment for $2,000 in favor of plaintiff is excessive, and will be reversed unless $1,000 be remitted.

FROM the circuit court of Scott county.

HON. JOHN R. ENOCHS, Judge.

Livingston, appellee, was plaintiff, and the railway company, appellant, was defendant in the court below. From a judgment for $2,000 in plaintiff's favor, the defendant appealed to the supreme court.

The evidence for plaintiff was that he and a companion were at Forest, a station on defendant's road, and intended to take the passenger train going east late that night for Meridian. About 8 or 9 o'clock that night they were in a barber shop, and in a conversation with a Mr. Bustin, who was track supervisor of defendant's road, said something about the lateness of the time for the arrival of the passenger train, when Bustin told them that they could go on the through freight train. They in a short time thereafter got on the through freight, and the conductor came around and asked them if there were some cattle to go on the train, to which they replied they did not know. The conductor then went about his business, and in twenty minutes thereafter the train left Forest, and when about half way to the next station the conductor came to them and told them they could not ride on that train, and that he would put them off at Lake. When the train reached Lake it did not stop, but went by three or four miles, when the train was stopped, and they were put off. Plaintiff testified that he informed the conductor that Bustin told him he could ride on the train, or he would not otherwise have gotten on. Plaintiff could not reason with the conductor; offered to pay him for his passage, but every time he said anything about pay the conductor would curse him, and every time he tried to reason with the conductor he would curse and abuse him; that he then offered the conductor $10 if he would take him to the next station, and the conductor replied: "I will not take your money; I believe you are a damned railroad spy, anyhow;" it was a cold, dark night, and was raining, and plaintiff and his companion had to walk back to Lake three or four miles. The testimony for defendant was that Bustin did not tell plaintiff or his companion that they could ride on the through freight train ; that the conductor never

saw them until the train left Forest, and that he told them between Forest and Lake that they could not go on that train, and that he would put them off at Lake; that when they reached Lake it was raining, and the smoke was so heavy the signal to stop could not be seen, and the train ran through about a mile, when it stopped, and plaintiff and his companion were then put off without insult; that Bustin had no authority to give any one permission to ride on the freight train; and that the train was not authorized to carry passengers except when they were in charge of cattle.    Defendant's motion for a new trial was overruled.

*McWillie & Thompson,* for appellant.

The liability of a railroad company for ejecting a passenger or other person for cause at a place distant from any station or dwelling house is purely statutory.    *Great Northern R. Co.* v. *Miller,* 19 Mich., 305.

There is no rule of the common law requiring a person who is ejected for cause to be put off at any particular place, only it must be at a place where it will not subject him to great peril; therefore such person cannot, at common law, recover for being put off at an inconvenient place.    *Great Western R. Co.* v. *Miller, supra; Hall* v. *So. Car. R. Co.,* 28 So. Car., 261; *So. Fla. R. Co.* v. *Rhodes,* 25 Fla., 40.

This is entirely agreeable to the doctrine of this court that to train trespassers railway companies owe no duty save to refrain from doing them wanton or willful hurt.    *Railroad Co.* v. *Burnsed,* 70 Miss., 437.

The plaintiff undertook to show that he was not a trespasser because, as he testified, he had gotten *verbal* permission from one Bustin, *a track supervisor,* to ride on the freight train. As the court will see, Bustin and two other persons who were present at the time of the alleged conversation (Simmons and Harrison), deny that any such permission was given, but it was not

pretended that Bustin had any authority to grant such permission, and, singularly enough, after introducing the evidence of such permission, *the plaintiff's counsel asked and obtained an instruction to the effect that Bustin had no such authority.* The plaintiff's testimony leaves him in a peculiar attitude as to this matter, since he says he relied on Bustin's word as giving him permission to ride on the train, but did not know that the train could not take passengers without permission. According to his own showing, he proceeded on the mere verbal authorization of a man whom he did not know to be authorized to give such permission and who in fact had no such authority. If such permission was given, and he relied on it, it was his own folly, and it had no effect on the duties of the other servants of the company who knew Bustin could not give such permission and that they had to obey orders without reference to Bustin, who was an inferior officer belonging to a department that had nothing to do with train service.

The verdict is wrong because the plaintiff did not have the implied assent of the conductor to ride on the train and was a mere trespasser, and properly ejected. And the court below erred in so modifying the instructions asked by the defendant as to deny the defendant the right to a verdict if the conductor had impliedly consented to plaintiff's riding on the train. The conductor had no right to give such consent either expressly or impliedly and there was no evidence that he did so.

The verdict of $2,000 is outrageously excessive. The plaintiff and his companion have to thank their own folly for what befell them and for a walk back to Lake; although the night was a disagreeable one, no such sum should have been allowed even in a case of liability. Neither of them sustained any injury, or were made sick in any way. Most men are satisfied to come out even after a drunken frolic, and no reason can be found why this one should result in the enrichment of appellee.

*R. S. McLaurin, S. L. McLaurin,* and *Green & Green,* for appellee.

The conductor was the officer and the only one present in absolute control of the train, with the apparent right to say who, if any one, should travel on it; and when he permitted the plaintiff to take passage on it, as may be fairly inferred from the evidence of the plaintiff that he did, the plaintiff without notice of any want of authority in the conductor to grant such permission and in the absence of collusion between him and the conductor to defraud the company of its fare, whether he paid it or not, became a passenger of the defendant and entitled to his rights as such. Wood Railway Law, 1039, note 3; *Creed* v. *Pa. R. Co.,* 86 Pa., 139; *St. Joseph & W. R. R. Co.* v. *Wheeler,* 35 Kan., 185; *Dunn* v. *Grand Trunk R. Co.,* 58 Maine, 187; *Wilton* v. *Middlesex R. Co.,* 107 Mass., 108; *Ohio & M. R. Co.* v. *Muhling,* 30 Ill., 9; *Sherman* v. *Hannibal & St. J. R. Co.,* 72 Mo., 63; *Muelhausen* v. *St. Louis R. Co.,* 91 Mo., 344, 6 West Rep., 857; *Jacobus* v. *St. Paul & C. R. Co.,* 20 Minn., 125 (Gil. 110); *Wagner* v. *Mo. Pac. Ry. Co.,* 3 L. R. A., 156.

In *Whitehead* v. *St. Louis, Iron Mountain and Southern Ry. Co.,* 6 L. R. A., 411, the court says: "It is next insisted and, indeed, the proposition lies at the foundation of all the objections made to the judgment in this case, that the conductor had no power to permit the boy to ride on the train, because the defendant's rules forbade the conductor to carry passengers on this particular train. From this the conclusion is sought to be made that the boy was wrongfully on the train, and entitled to no care from defendant. The rule of law asserted on all hands is that the master is civilly liable for the negligence or wrongful acts of his agent when done in the course of the agent's employment, even though the master may have prohibited the agent from doing the act of which complaint is made." *Garratzen* v. *Duenckel,* 50 Mo., 107; *Cousins* v. *Hannibal & St. J. R. Co.,* 66 Mo., 576; *Ramsden* v. *Boston & R. R. Co.,* 104 Mass., 120.

That the conductor went beyond his instructions does not re-

lieve the company.    See *Richberger* v. *Express Company,* 73
Miss., 161.

Argued orally by *T. A. McWillie,* for appellant, and *S. L.
McLaurin* and *Marcellus Green,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

We do not think there was any implied contract to carry ap-
pellee as a passenger.    He must be treated as a trespasser, but
not as a willful trespasser.    He must be regarded as having
boarded the train believing that Bustin had authority to allow
him to travel on a freight train.    But the evidence makes it
equally clear that he was put off under circumstances of insult
and outrage, and that, too, by the conductor acting in the line of
his duty.    The conductor had a right to put him off under
proper circumstances and at a proper place and time (*Hudson*
v. *Lynn & B. R.,* 178 Mass., at page 67, 59 N. E., 647; *Louis-
ville, etc., R.* v. *Sullivan,* 81 Ky., 634 [50 Am. Rep., 186]);
but it was his duty, even towards this trespasser, not to willfully
and maliciously wrong him by insulting and abusing him when
he put him off.    Because of the mode in which he was ejected,
to wit, because of the cursing and abuse on the part of the con-
ductor, we think the company is liable for punitive damages.

My brethen think, however, that the damages are too large,
and that $1,000 only should be allowed.    I would prefer to al-
low the full amount to stand, speaking for myself, under all
the circumstances of this case; but my conviction is not strong
enough to warrant dissent about a mere matter of damages.

*If, therefore, the appellee will remit $1,000, the judgment
will be affirmed; otherwise the cause will be reversed and re-
manded.*