JOHN McMANUS *vs.* SAMUEL B. THING & others.

Suffolk.   December 13, 1906. — February 28, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence.   Elevator.   Landlord and Tenant.*

If the lessee of a building containing a freight elevator sublets portions of the building, with the agreement and understanding that the subtenants and their employees as well as the lessee and his employees may use the elevator but that when any one of the occupants of the building is using the elevator he shall have the exclusive use of it until his use is completed, and if, while a servant of one of the subtenants is using the elevator and has not completed such use, a servant of the lessee at his own request is permitted by the servant of the subtenant to come upon the elevator with a truck holding a large crate, whereupon the servant of the subtenant starts the elevator and the servant of the lessee is injured, in an action by the person injured against the master of the servant who started the elevator, the plaintiff is in the position of a mere licensee and cannot recover unless he shows that the servant of the defendant injured him wilfully or acted with such reckless wantonness as to amount to a wilful wrong.

TORT for personal injuries alleged to have been caused by the negligence of one Redding, a servant of the defendants, in starting a freight elevator without notice to the plaintiff who was upon it, whereby the plaintiff's foot was caught and crushed. Writ dated July 15, 1903.

In the Superior Court the case was tried before *Aiken,* C. J. The accident occurred in the middle of the afternoon of April 11, 1903, on the freight elevator in the building at the corner of Congress Street and High Street in Boston. The building was leased to the George E. Gilchrist Company, a dealer in plumbers' supplies, which occupied the first and second floors and also some other floors of the building, and sublet some of the upper floors to other concerns. The plaintiff was in the employ of the Gilchrist Company. The defendants were copartners engaged in the wholesale and retail shoe business, and occupied the fifth floor or loft of the building as subtenants at will of the Gilchrist Company. They had an agreement with the Gilchrist Company by which they and their employees were to use this freight elevator in common with other tenants in the building. The defendants used the loft in question as a storage loft, the main office of the firm being in another building on Congress Street.

One Baxter was called by the plaintiff, and testified that at the time of the accident he was a clerk in the employ of the Gilchrist Company. " As to the rights of the various occupants of the building to the use of the elevator he said that when the employees of one tenant were using the elevator they had the right to the exclusive use thereof until they were through, and that if the employees of any other tenant rode thereon it was by the courtesy of the party using it."

One Pentleton, also called by the plaintiff, who was another clerk employed by the Gilchrist Company, testified that " when one of the tenants of the building or his employees were using the elevator the one using it had the exclusive use thereof until he was through with it."

The plaintiff testified that just before the accident the elevator was stationary, on a level with Congress Street, and the Congress Street door was open; that he desired to take up to one of the upper floors of the building two large crates about five and

one half feet by three and one half feet and weighing about seven hundred pounds each, which were on the sidewalk and belonged to the Gilchrist Company; that he got a two wheeled hand truck, loaded one of the crates upon it and wheeled it across the sidewalk of Congress Street, walking backward and dragging the truck after him; that proceeding in this way he entered the elevator which was entirely empty and had no one on it, Redding being at the time on the sidewalk.

He then described the accident as follows: " So I pulled the crate after me right on to the elevator, and I had another one to put on, so I had to pull it back as far as I could, this way, and I was in the act of ending-up the crate — it took all my strength; it probably weighed seven hundred pounds — and this heel (his right) stuck out a little over the floor of the elevator, and this man, Mr. Redding, come on to the elevator and started the cable and caught my foot between the elevator and the other floor."

On cross-examination he said that Redding walked into the elevator from Congress Street, and standing by the cable facing inward, pulled the rope and started the elevator; that according to his understanding Redding had as much right on the elevator as he did, but that Redding had no right to operate the elevator at that time while the plaintiff had possession of it.

Redding was called as a witness by the defendants, and, as to what occurred at the time of the accident, said that he had prepared for shipment a number of cases of rubbers; that he had loaded them on the elevator from the floor occupied by his employers, and had taken them down to the street; that he there unloaded them, aided by one Bagley, a teamster's helper, who took the cases from the witness at the elevator door and carried them across the sidewalk to pile them either on a wagon or at the edge of the sidewalk; that the cases which they were handling varied in size, the largest being two or three or three and one half feet in length by eighteen inches or two feet across, the smallest being about ten inches by eight inches.

He then testified as follows: " I got them all off with the exception of about three cases that were so badly broken I con-cluded I would take them upstairs, and I placed them on one side of the elevator; they were rather small cases; I placed them on one side of the elevator. . . . Well, I started — after I had

discharged my load with the exception of them three cases I started to return. I pulled the elevator down — that is, the rope down — to start it up, and the elevator had risen perhaps a matter of an inch or two when Mr. McManus jumped upon it as it was moving. He says, 'Wait, stop,' which I did. He then requested me to return to the street. I remonstrated with him, telling him I was very busy and I couldn't very well take the time necessary to return to the street. — He said — he says, 'I wish — I want to take this crate up.' I then at his request returned — shifted the elevator back — it had risen up perhaps a matter of three or four inches — back to a level with the sidewalk, and I stood there, with my right hand upon the rope, facing the street, and I watched him as he came into the elevator with this crate on the truck."

The witness then said that after he had brought the elevator back to the Congress Street level McManus stepped up into the first floor store, occupied by the Gilchrist Company, and there got a hand truck; that he came back across the elevator with the truck and went out to the Congress Street sidewalk. "He put the crate on the truck and backed back of it with his two hands holding each handle, with the truck; backed back of it as far on to the elevator as he could conveniently go. He paused for a moment when he got there. I spoke to him; I says, 'All right?' and he says, 'Yes.' And I pulled the rope to go up. The next I heard, he cried out, 'Stop, I am caught,' and I stopped the elevator as quickly as possible. I turned at about the same time and I see that his feet — both feet — were caught underneath the studding — a piece of studding or joisting that runs underneath the floor and — between this joisting and the lip of the elevator or the flooring of the elevator."

At the close of the evidence the defendants asked for certain rulings among which were the following:

Ninth. If the plaintiff was a trespasser or a bare licensee, the defendants and their agents and servants owed him no duty except to refrain from wantonly, wilfully or recklessly exposing him to injury.

Tenth. If the plaintiff was a trespasser or a bare licensee, he cannot recover in this action and the verdict must be for the defendants.

Eleventh.   There is no evidence in the case which would warrant the jury in finding that Redding wilfully or recklessly or wantonly caused the injury alleged to have been sustained by the plaintiff, and if the jury shall find that the plaintiff was upon the elevator as a trespasser or as a bare licensee, he cannot recover and the verdict must be for the defendants.

Twelfth.   If the jury shall find that the plaintiff was upon the elevator as a trespasser or as a bare licensee, he cannot recover unless the jury shall find that the injury to the plaintiff was caused by the wanton and reckless conduct of the defendant's servant done while acting within the course of his employment.

Thirteenth.   The defendants and their servants and agents did not owe the plaintiff any duty to warn him that the elevator was about to start.

The Chief Justice refused to make any of these rulings, and submitted the case to the jury with other instructions, the substance of which is stated in the opinion.   The jury returned a verdict for the plaintiff in the sum of $1,450; and the defendants alleged exceptions.

*R. E. Goodwin*, (*E. E. Blodgett* with him,) for the defendants.

*C. Reno*, for the plaintiff.

LORING, J.   The plaintiff testified that under the arrangement then in force as to the use of the elevator by the different occupants of the building, he (the plaintiff) had no right on it, to it, or to the use of it if it was being used by Redding; and, further (in effect) that if the defendants' broken boxes were on the elevator to be taken back and Redding had not left the elevator after he brought them down, the elevator was being used by Redding within the arrangement testified to by him.   There does not seem to have been any evidence to the contrary.

It is plain therefore that if the jury believed Redding's story the plaintiff was a trespasser or at most a licensee at the time of the accident.   *Albert* v. *Boston Elevated Railway*, 185 Mass. 210.   *Shea* v. *Gurney*, 163 Mass. 184.   It is immaterial which. For if either a trespasser or a licensee the defendants were not liable unless their servant Redding injured the plaintiff wilfully or acted with such reckless wantonness as to amount to a wilful

wrong and thereby caused the injury. *Banks* v. *Braman,* 188 Mass. 367.* *Bjornquist* v. *Boston & Albany Railroad,* 185 Mass. 130. *Albert* v. *Boston Elevated Railway,* 185 Mass. 210. *Shea* v. *Gurney,* 163 Mass. 184.

For these reasons the ninth, tenth, eleventh, twelfth and thirteenth rulings asked for, or the substance of them, should have been given.

In place of doing so the presiding judge told the jury that they should find for the plaintiff if they found that Redding (in the course of the defendants' employ) was guilty of ordinary negligence and the injury to the plaintiff was caused thereby.

*Exceptions sustained.*

---

* See note at foot of page 162 of 192 Mass.