JOSEPH LEBOV *vs.* CONSOLIDATED RAILWAY COMPANY.
MOSES LEBOV *vs.* SAME.

Hampshire.     September 21, 1909. — October 20, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence,* Street railway, Trespasser.     *Trespass.*

A trespasser upon a street car, who is injured while voluntarily jumping from the car to avoid the conductor, by whom he had no reasonable ground for apprehending that he was about to be assaulted, has no right of action against the corporation operating the car.

At the trial of an action against a street railway company by a newsboy thirteen years of age to recover for injuries caused by his hand being run over after he had jumped from a car of the defendant as it was moving rapidly, it appeared that the plaintiff had got upon the running board on the left hand side of an open electric street car of the defendant, outside of an adjustable rail placed there by the defendant to prevent persons from entering the car on that side, and that he was a trespasser upon the car, that the car was running on the right track of double tracks, that after the car started the defendant's conductor, from his position on the rear platform of the car, shouted to the plaintiff and made a motion with his hand which the plaintiff rightly understood to be an order for him to get off the car, that the plaintiff did not obey and the conductor went along the running board on the right hand side of the car to a point opposite the plaintiff, put his foot into the car, spoke again to the plaintiff and motioned with his hands, that the plaintiff still remained on the left hand running board, that thereupon, the plaintiff testified, the conductor "was about to put his right foot in and he hollered something to me again, and he could almost reach me with his hand, and I jumped off." The plaintiff also testified that the conductor looked "mad" and that he thought the conductor was going to push him off. The car was running with some speed when the plaintiff jumped. A verdict was ordered for the defendant and the plaintiff alleged exceptions. *Held,* that the exceptions must be overruled, since there was nothing in the conduct of the conductor as shown by the evidence which justified on the part of the plaintiff a reasonable apprehension of violence, or would have warranted the jury in finding that the conductor wilfully or recklessly and wantonly exposed the plaintiff to danger.

TWO ACTIONS OF TORT, the first by a newsboy thirteen years of age, ten days in this country from Russia, where he was born, to recover for personal injuries due to his hand having been run over by an electric street car in New Haven, Connecticut, after he had jumped from it under the circumstances stated in the opinion; and the second action by the father of the plaintiff in the first, to recover for loss of his services and for other ex-

penses caused by his injury.     Writs in the Superior Court
dated November 17, 1906.

The cases were tried before *Raymond*, J.    At the close of the
evidence, the presiding judge ordered verdicts for the defendant;
and the plaintiffs alleged exceptions.

The facts are stated in the opinion.

*R. W. Irwin*, for the plaintiffs.

*J. C. Hammond*, for the defendant.

SHELDON, J.   The plaintiff in the first named case, hereinafter
called the plaintiff, was a trespasser upon the defendant's car, and
the defendant and its servants owed him no other duty than to
refrain from wilfully or recklessly and wantonly exposing him to
injury.    *Albert* v. *Boston Elevated Railway*, 185 Mass. 210, and
cases cited.   *Massell* v. *Boston Elevated Railway*, 191 Mass. 491.
*McManus* v. *Thing*, 194 Mass. 362.   Those of our decisions which
are relied on by the plaintiff are not at variance with this rule.
In *Lovett* v. *Salem & South Danvers Railroad*, 9 Allen, 557, there
was evidence that the conductor, so far as he could do so, had
accepted the plaintiff and his companion as passengers by telling
them to go on the front of the car.    The plaintiff also testified
that he saw the driver, who stood by him on the front platform,
move his hand, and thought that he felt the driver's hand or
foot when the latter told him to get off; and this would tend
to show an assault which might constitute wanton or reckless
conduct of the driver.    Knowlton, C. J., in *Bjornquist* v. *Boston
& Albany Railroad*, 185 Mass. 130, 132.    In *Murphy* v. *Union
Railway*, 118 Mass. 228, the plaintiff was not a trespasser, but
a passenger, although by reason of his offensive condition the
conductor had a right to remove him from the car.    *Vinton* v.
*Middlesex Railroad*, 11 Allen, 304.    In *Hudson* v. *Lynn & Boston
Railroad*, 178 Mass. 64, and 185 Mass. 510, a recovery was al-
lowed only for the actual assault committed upon the plaintiff's
intestate.    In *McKeon* v. *New York, New Haven, & Hartford
Railroad*, 183 Mass. 271, the defendant was held merely for the
reckless act of its brakeman in pushing the plaintiff off its car
while the train was moving "pretty fast."    So in *Rounds* v.
*Delaware, Lackawanna & Western Railroad*, 64 N. Y. 129, the
plaintiff was kicked from the car by the defendant's servant.
In *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269, the ground

of recovery was the wanton and reckless act of the defendant's motorman in suddenly starting his car at full speed around a curve, while he knew that the plaintiff, a boy less than seven years of age, was standing in a dangerous position upon the step and crying to the motorman to let him off. *Foley* v. *West End Street Railway*, 195 Mass. 332, turned on the point that the jury might believe the plaintiff's testimony, and so find that he was not a trespasser on the defendant's car, and did not voluntarily jump off in order to avoid the conductor. But that is exactly what this plaintiff did do.

But it is contended that the jury might find in this case that the conductor's conduct was wilful, wanton and reckless, on the ground that he used towards the plaintiff such threatening words and gestures as to cause in the plaintiff's mind reasonable apprehension that the conductor would immediately assault him or would throw him from the car while it was in rapid motion, and that it was because of such reasonable apprehension that the plaintiff jumped from the car, fell under it, and was injured. This contention makes it necessary to consider the state of affairs which was shown at the trial.

The plaintiff, at the corner of Church and Chapel Streets, apparently a busy place in the city of New Haven, Connecticut, jumped upon an open street car of the defendant, for the purpose of selling newspapers. There was here a double track, and he got upon the left side of the car, where an adjustable bar was in place to prevent any one from entering the car on that side. The car was then standing still, but started at once. The conductor, who was standing on the rear platform, shouted to the plaintiff, and made a motion with his left hand, which the plaintiff rightly understood to be an order to get off the car. When the plaintiff disobeyed this order, the conductor left the platform, went along the right side of the car until he got opposite to the plaintiff, put his foot into the car, spoke again to the plaintiff and motioned with his hands. The plaintiff still remained in his position; the conductor, as the plaintiff testified, " was about to put his right foot in and he hollered something to me again, and he could almost reach me with his hand, and I jumped off." He further testified that the conductor looked angry, or "mad"; and that he thought the conductor

was going to push him off, and jumped off for that reason. During the whole occurrence the conductor was on the right hand side of the car, separated from the plaintiff by the whole width of the car. The car was running with some speed when the plaintiff jumped.

On these facts, the plaintiff's contention cannot be sustained. His position upon the car, standing upon the running board where by reason of the bar he could not enter the car and was liable, as he stood with his papers under his arm, to be hit and hurt by cars that might pass upon the other track, was dangerous, and one that the conductor ought not to allow him to occupy. Moreover, he ought not to have been upon the car at all. The conductor's duty to the company, as well as a proper concern for the plaintiff's own safety, required him to see that the plaintiff did not remain there. The language of the present Chief Justice in *Bjornquist* v. *Boston & Albany Railroad*, 185 Mass. 130, 132–134, is peculiarly applicable here. Nor did this conductor use language even as violent as was testified to in that case and held to be insufficient to justify a finding of wilful and wanton conduct. Indeed, upon the vital question involved, this case is much stronger for the defendant than was that one. It was expressly found there, as upon the testimony is claimed to have been the case here, that the car was moving at a dangerous rate of speed for the plaintiff. There was nothing to show that the conductor's gesture testified to was anything more than a waving of his hand. We see nothing in his conduct which justified on the part of the plaintiff a reasonable apprehension of violence, or any other fear than that which arose from his manifest consciousness of his own wrongdoing. *Planz* v. *Boston & Albany Railroad*, 157 Mass. 377, 381.

In *Albert* v. *Boston Elevated Railway*, 185 Mass. 210, the language and conduct of the conductor were very similar to those here testified to. There as here the conductor was at some distance from the plaintiff. Here as there it cannot be said that he had reason to expect that his command would cause the plaintiff serious injury. The only substantial difference between the cases is that there it did not appear that the speed of the car was increased or diminished after the plaintiff's attempt to get on and before the happening of the accident. But

the natural and gradual increase of speed after starting within such limits as were here testified to was treated as an immaterial circumstance in *Planz* v. *Boston & Albany Railroad,* 157 Mass. 377, 380.

The plaintiff in the case of *Mugford* v. *Boston & Maine i. road,* 173 Mass. 10, was about two years younger than th plaintiff. He was ordered by a brakeman to get off a freight train which, according to some of the evidence, was going at the rate of eight miles an hour. The highest rate of speed testified to in the case at bar was seven to eight miles an hour. The brakeman in that case was as near to the plaintiff, and his gestures were as threatening, as was testified to of the conductor in this case; but that plaintiff was not allowed to recover.

In our opinion, these cases must be governed by the rule laid down in *Albert* v. *Boston Elevated Railway,* 185 Mass. 210, and *Massell* v. *Boston Elevated Railway,* 191 Mass. 491. See also *Anternoitz* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 542; *Leonard* v. *Boston & Albany Railroad,* 170 Mass. 318; *Sullivan* v. *Boston Elevated Railway,* 199 Mass. 73, 76.

*Exceptions overruled.*