CAMILLE SHEPARD *vs.* BOSTON & MAINE RAILROAD.

Worcester.    October 4, 1892. — March 1, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Railroad — Negligence — Superintendence.*

In an action against a railroad corporation, under the St. of 1887, c. 270, § 1, cl. 2, for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the negligence of a person in the service of the defendant intrusted with and exercising superintendence, it appeared that the plaintiff was on a hand-car and was run into by a "wild train," that is, a train running by special orders and not regularly to be expected at the same time; that the train and the hand-car were moving towards each other round a curved ledge of rock, which prevented their seeing each other until within a distance of from ninety to fifty feet; that the train was on an up grade, going ten or twelve miles an hour, and the hand-car on a down grade, going from twelve to fifteen miles an hour; that it was a common thing for wild trains to come along, and the plaintiff, who had worked on this road as a section hand for the greater part of the last fifteen years, "knew about the habits of running the road." The defendant's rules provided that "enginemen and conductors who are to run wild trains or engines will see that the train preceding them carries a red signal for them," and that this was a notice to sectionmen that a wild train was to follow; that "if, however, for any reason, it is impossible for them to do so, they must . . . run at a slow rate of speed around all curves"; that "wild trains will, when a flag has not been sent on a previous train, before turning any curve, reduce rate to a speed not exceeding fifteen miles per hour"; that "wild trains may be run over the road on telegraphic orders without notice"; and that wild trains should whistle one mile before turning a curve. It also appeared that, in the present case, it was impossible for the wild train to get the red flag on to the train next ahead, because the latter had started. There was no direct evidence that the plaintiff knew the rules, but the section foreman in charge of the hand-car had a copy of them. The plaintiff testified that they did not know when the train was coming; and the engineer of the train

testified that he whistled before he got to the curve, perhaps within fifteen or sixteen rods, and, on cross-examination, that there was "no notice to them that train was coming only so far as whistle was concerned." *Held*, that the jury would not have been *warranted in finding the defendant negligent; and that the defendant could not be held liable on the ground that the conduct of the hand-car was governed by the section foreman, who was a person intrusted with and exercising superintendence, and to whose negligence, while superintending, the accident was due.*

HOLMES, J.   This is an action of tort for personal injuries, brought under the employers' liability act, St. 1887, c. 270, § 1, cl. 2, alleging that the injuries were caused by reason of the negligence of a person in the service of the defendant intrusted with and exercising superintendence.   At the trial, the judge directed a verdict for the defendant, and the plaintiff excepted. The case was this.   The plaintiff was on a hand-car, and was run into by a wild train, as it is called, that is, a train running by special orders and not regularly to be expected at that time.   The train and the hand-car were moving towards each other round a curved ledge of rock, and the ledge prevented their seeing each other until within a short distance, say from ninety to fifty feet.   The train was on an up grade, going ten or twelve miles an hour, the hand-car on a down grade, going from twelve to fifteen miles an hour, probably faster than the train.   It was a common thing for wild trains to come along, and the plaintiff, who had worked on this road as a section hand for the greater part of the last fifteen years, " knew about the habits of running the road."   The rules of the defendant provide that " enginemen and conductors who are to run wild trains or engines will see that the train preceding them carries a red signal for them," and that this is a notice to sectionmen that a wild train is to follow.   The rule goes on, " If, however, for any reason, it is impossible for them to do so, they must . . . run at a slow rate of speed around all curves."   Another rule is, " Wild trains will, when a flag has not been sent on a previous train, before turning any curve, reduce rate to a speed not exceeding fifteen miles per hour."   In the present case it was impossible for the wild train to get the red flag on the train next ahead, because the latter had started.   As has been said, it obeyed the rules as to speed.   Another rule provided that " wild trains may be run over the road on telegraphic orders without notice."

There was no direct evidence that the plaintiff knew the rules, but perhaps it might be presumed. The section foreman in charge of the hand-car had a copy of them. They are material only as admissions of what precautions were proper, and so far as they may have led those to whom they were communicated to expect conduct in accordance with them.

Stopping at this point, it is plain that the defendant had a right to send trains over its tracks at whatever times it saw fit, and the rules on their face gave notice that it intended to exercise its right. The rules also gave notice on their face that, while the signal ordered would be a warning when it was seen, in some cases no such warning could be given, and therefore that all persons interested must look out for themselves. The moment a man has notice that a train may come along a track without warning at any hour, if he is run down by such a train when he is travelling on the track the other way, it is impossible for him to escape the imputation of negligence merely by showing that such trains were few and the chance of their coming small. Furthermore, the plaintiff implies that they knew the train was coming by his testimony that they did not know when it was coming. On the other hand, despatching a wild train without signal is not necessarily negligence in the defendant.

The only other evidence in this case possibly bearing on the conduct of those on the hand car is the testimony of the engineer of the train, that he whistled before he got to the curve, perhaps within fifteen or sixteen rods, coupled with his statement, on cross-examination, that there was " no notice to them that train was coming only so far as whistle was concerned." It is argued that this means that he neglected to give the whistle one mile before turning the curve, required of all wild trains by a rule not mentioned above, and that the plaintiff may have been lulled into security by the omission. It would require something of a stretch of imagination and belief to suppose that the omission, if there was one, could be sufficient to justify the conduct of the people on the hand-car, or indeed that it affected their conduct at all. But it is enough to say that we do not read the testimony as having the meaning argued for. We understand it to mean that there was no warning but a whistle, not that there

was no warning but a whistle within fifteen or sixteen rods of the curve.   As we look at the plaintiff's case, the hand-car, without excuse and having notice that a wild train might come along at any time, went down grade round a curve of rock which wholly cut off the view, at a rate faster than that of the train which met it.   *Clifford* v. *Old Colony Railroad,* 141 Mass. 564.

We have shown what was the real cause of the injury.   Assuming that the plaintiff might have been found to have been free from personal negligence in view of his subordinate position, we have only to add that, in the opinion of a majority of the court, the jury would not have been warranted in finding the defendant negligent.   As we have said, it was impossible for the wild train to communicate directly with the train next before it, because the latter had started.   It is said that the wild train might have telegraphed.   But there was nothing in the rules which gave any one a right to expect that, and the jury would not have been warranted in finding that the defendant owed the plaintiff any duty to do so.

A majority of the court also are of opinion that the defendant cannot be held liable on the ground that the conduct of the hand-car was governed by Doyle, the section foreman, that he was a person intrusted with and exercising superintendence, and that the accident was due to his negligence while superintending.

*Exceptions overruled.*

*W. A. Gile,* for the plaintiff.
*F. P. Goulding,* for the defendant.