HENRY E. ST. JEAN *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    December 16, 17, 1897. — January 8, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Railroad — Negligence — Action.*

An action cannot be maintained against a railroad corporation for personal injuries sustained by a person in its employ as a track repairer, who, while at work on a rail which had been taken up and lay alongside of and near the track, bending down with his head close to or over the track, is struck by a regular train running at the regular time and in the usual way, which was in plain sight for a quarter of a mile, and the whistle of which at a greater distance had been audible even farther away than the place where he was at work, his hearing being good, and he having been called to by fellow workmen upon the approach of the train.

TORT, under the employers' liability act, St. 1887, c. 270, for personal injuries sustained by the plaintiff by being struck by a train. Trial in the Superior Court, before *Mason*, C. J., who allowed a bill of exceptions, in substance as follows.

The plaintiff offered evidence tending to show that on January 8, 1896, he was in the employ of the defendant as a track repairer, at a place called Summit Station, near Worcester, on a branch of its railroad called the Worcester, Nashua, and Portland Division; that he had been employed by the defendant

about a month; that of that time all but five or six days had been spent in laying side tracks elsewhere; that at the time of the accident he had been working five or six days repairing tracks on the stretch of track beginning some eighteen hundred or two thousand feet westerly from the place where he was then at work, and continuing easterly along such stretch of track up to that place; that one Bowles was in charge of a gang of twelve men, including the plaintiff, who were repairing the tracks at different points in the vicinity where the plaintiff was injured, but at the time of the accident Bowles was at the Summit Station, fourteen hundred and forty feet in a westerly direction from the place where the plaintiff was hurt; and that at the time of the accident, and for some fifteen or twenty minutes prior to that time, the plaintiff was at work unscrewing nuts from the bolts in an old rail which had been placed eighteen inches outside the rail of the track upon which the train that injured him came.

There was evidence tending to show that it was the custom of the workmen to place the old rails upon the ends of the ties when performing labor upon them such as that in which the plaintiff was then engaged; that in the course of this employment the plaintiff used a wrench about two feet long, and an iron hammer that weighed eight or nine pounds, and that it was not possible for him to have remained so at work that no part of his body would have been exposed to a train upon the tracks; that the Summit Station was a flag station and east of it was a crossing without gates, and at a curve some thirteen hundred and forty feet in a westerly direction from the station, the rules required the engineer to whistle for the purpose of warning persons at the station or at the crossing of the approach of a train; that from the whistling post in such curve to the place where the plaintiff was injured was about twenty-eight hundred feet; that the engine did whistle while on the curve, and at a point where the plaintiff and those at work near him could not have seen it; that the train was not then in sight; that it was going about twenty-five or thirty miles an hour, and did not stop at the station; that there was a down grade from the station to the place where the plaintiff was at work; that from the time of the whistle on the curve the engine did not whistle, neither

did the bell ring; and that, for a distance of fourteen hundred and eighty feet in the direction from which the train came, there was a straight stretch of track and no obstruction to view.

A witness, who was farther from the place from which the train came than the plaintiff, testified that at the time he heard the whistle he looked and saw the plaintiff at work unscrewing nuts from an old rail; and that he looked at the plaintiff again when the train was some three or four hundred feet away, and the plaintiff was still at the same work. It appeared that the plaintiff kept constantly at work until the train struck him; that the train did not slacken its speed or stop after the plaintiff was struck; and that the rules of the defendant required the engineer to give warning to persons or animals on its tracks of the approach of the train by blowing consecutively short sharp blasts of the whistle.

Xavier Jean, called as a witness by the plaintiff, testified that he was at work at the time of the accident on the same track as the plaintiff, but on a different rail, and farther than he from the approaching train by the distance of one hundred and fifty feet; that they had worked at that place five or six days repairing the track; that the plaintiff was at work unscrewing nuts from old rails and taking off old bolts; that the old rail was on the outside of the track, eighteen or twenty inches from the rail upon which the train came; that the plaintiff was bent over, with a wrench a foot and a half long, and his head was over the rail; that it was not possible for him to do that work so as to prevent some part of his body from being exposed to a train upon the tracks; that the train by which the plaintiff was injured was a regular train, always running at the same hour; that he heard it coming when it was at the station; that he heard it whistle for the crossing at the Summit Station and before it came in sight, there being four whistles, two long and two short ones; that five persons were working there at that time; that the engine did not whistle, neither did the bell ring, after the train came into sight; that as the train came along the plaintiff was still unscrewing nuts, as when the witness first saw him before the train came into sight; that the kind of work which the plaintiff was doing made it more difficult to hear the approach of trains; that there was snow on the ground, and snow deafens

the hearing of the approach of trains; that the train came fast, and the front part of the engine struck the plaintiff on the right side of the head; that the witness did not call to him because he was afraid that he would jump in front of the train and get killed; that the plaintiff did not look up at any time, but kept doing the same work; that the plaintiff's hearing was good, and he had no difficulty in understanding the witness when he spoke English; that he knew, aside from the signal, that it was time for the train to come, and knew no reason why the plaintiff should not have known that too; and that it was part of the witness's business to watch and listen for signals.

Albert S. Davis testified that he was in the gang with the plaintiff, putting in steel rails below the crossing, and came along up to the place where the plaintiff was injured; that he was sixty feet nearer the station than the plaintiff when he was hurt; that he heard the train coming, and heard it blow for the crossing before it came around the curve; that he saw the engine all the time as it came along; that after hearing the whistle, he kept watch for it; that it was not possible for a man to do the work which he and the plaintiff were doing without having some part of the body exposed to a train on the tracks; that the whistle was not blown nor the bell rung after the train came in sight; that it was a down grade, and the train was going forty miles an hour; that he saw the plaintiff all the time as the train came along; that he was still at work upon the old rail; that when the train came along the witness got up, and when it was about up to him he called to the plaintiff to look out, that the train was coming; that the wind was blowing against him at the time; that the plaintiff never moved, but kept right on at work; that he heard the plaintiff's brother call to him in French when the train was about at the crossing; that the train was in plain sight for a quarter of a mile; that there was no obstruction between the crossing and their place of work; that it was the witness's business when he heard a signal to get out of the way of the coming train; that he did not know what the signal was to warn people on the track; and that it did not blow that day.

Frank Landry testified that he was about three hundred and thirty-seven feet nearer to the crossing than the plaintiff, going

towards the station; that he heard the bell ring and whistle blow before the engine came around the curve, and before it was in sight; that he heard the bell and whistle for the crossing without difficulty; and that the bell did not ring nor whistle blow after the train came into sight.

One Ladre testified that he was working on this track from two hundred and twenty-four to two hundred and forty feet farther from the station than the plaintiff; that he saw the train coming and heard the whistle before it reached the curve; that after it came in sight he heard neither whistle nor bell; that the plaintiff was at work outside the track on an old rail which had been taken off; that the witness did not think he was in any danger; that Bowles told the witness and others to look out for the trains when the work commenced; and that he did not remember whether the plaintiff was there or not.

Albert S. Davis, recalled, testified that Bowles always told everybody in the gang to look out for trains; and that at the time of the accident, nobody was in charge of the men, Bowles having been up at the station for about half an hour.

The plaintiff's wife testified that her husband spoke good English.

Upon all this evidence, the judge ruled, as matter of law, that the plaintiff could not recover; and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*C. H. Innes*, for the plaintiff.

*G. F. Richardson*, for the defendant.

BARKER, J. In our opinion, the verdict for the defendant was ordered rightly. The train was a regular one and came at the regular time and in the usual way. It was the plaintiff's duty to get out of its way, without compelling those in control of the train to give him warning of danger. He does not seem to have been upon the track itself, though working upon a rail which had been taken up, and which lay outside of the track and near it. But if it could be found from the evidence that he was upon the track, or so near the track, and so leaning toward or over it as to make it the duty of the engineer to give the signal required by the rules to persons on the track, and that the engineer was negligent in not giving that signal, the plain-

tiff had no right to stay upon the track until such a signal should be given. It was his duty seasonably to put himself out of danger at the approach of the train. His hearing was good. The train had been in plain sight for a quarter of a mile, and its whistle at a greater distance was audible even farther away than the place where he was at work. Beside the warning given by the approach of the train itself, he was called to by fellow workmen. The inference must be drawn from the testimony that he was negligent in not noticing the approach of the train, and this negligence precludes his recovery.        *Exceptions overruled.*