WILLIAM H. MORRIS *vs.* BOSTON AND MAINE RAILROAD.

Worcester.   September 29, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence*, Employer's liability.

A section hand, whose duty requires him to stand between two tracks of a steam railroad in clearing deep snow from a switch, and who has to bend down in doing his work, is not in the exercise of due care if he fails to use his eyes in looking both ways for passing trains, relying on rules, not intended for the protection of section hands, which require a whistle to be sounded or a bell to be rung on engines or trains approaching from one direction the place where he is working.

TORT, under the employers' liability act, by a section hand against the railroad company employing him, for personal injuries from being run over near Wachusett station by an east bound extra train of the defendant consisting of a snow plow and

engine, through the alleged negligence of the engineer in failing to blow a whistle before turning the curve west of Wachusett station or to ring the bell while the train was passing that station, as required by the rules of the defendant.    Writ dated February 12, 1902.

At the trial in the Superior Court before *Stevens,* J., the jury returned a verdict for the plaintiff in the sum of $3,500 ; and the defendant alleged exceptions.

In a book of rules and regulations of the defendant put in evidence by the plaintiff, were the following, which are referred to in the opinion :

" 95  (b)  Extra trains must be run with care and a sharp lookout kept for signals and for persons and teams at grade crossings, also looking out for and keeping clear of shifting engines and freight cars in yard limits ; and give a long whistle one half mile before turning all curves.   The speed of extra trains around curves must not exceed twenty-five miles per hour.

" 705   Engine men must be sure that the bell is rung before starting a train after each stop and while passing stations.

" 739   Section men must know when regular trains are due and keep clear of them.   Extra trains may be run over the road without notice, and section men must use the utmost caution at all times as a train may be expected at any moment."

The defendant put in evidence a book of rules for track foremen, Rule 26, referred to in the opinion, being as follows :

" They [track foremen] must instruct their men not to rely upon others to warn them of the approach of engines or trains, but must themselves keep a proper lookout ; they must call their attention to the fact that coal is liable to fall from tenders of engines and articles from cars, also that great care and caution must be used in stepping from one track to another in order to avoid a train on either track."

*C. M. Thayer,* (*J. O. Sibley* with him,) for the defendant.

*J. E. McConnell,* (*J. W. McConnell* with him,) for the plaintiff.

LORING, J.   This is an action. brought by a section hand run over by an engine pushing a snow plow.

It was the plaintiff's duty to clear out a switch the day after the heaviest snow storm of the year, — a storm which left the

snow "waist high all over the tracks." The switch in question was east of Wachusett station. Going west from the switch, the place of the accident, Wachusett station was about two hundred yards distant on the right side of the track, and a little west of the station was a sharp curve also on the right.

About four o'clock in the afternoon of the day after the storm, the plaintiff began to clear this switch for the second time that day. The switch led from the east bound track to a side track running parallel with it and re-entering the east bound track beyond Wachusett station. There was no cross over to the west bound track at this point; the switch led from the side track to the east bound track and ended there. The plaintiff testified and the jury were warranted in finding that the snow lay three feet deep between the west and east bound track and about the same on both sides; that the snow was piled high alongside of the track, and in the centre between the tracks. It was not snowing at the time but the wind was blowing very hard, and the snow was drifting and was so blinding that one could hardly see. The point in question was on an embankment where the wind had a clean sweep. Soon after the plaintiff went to work a west bound freight train passed, and the guard on the cow catcher was throwing the snow to such a distance that the plaintiff not only got off the west bound track but crossed over to the other side of the east bound track to let it go by. After this train passed, the plaintiff looked each way and continued digging snow, standing between the east bound and west bound tracks, bending over, with his back to the west and looking to the east. The reason given by him for this was that he could see some one hundred yards only; that against trains running west he had no protection, and against trains running east he relied on the whistle and the bell which he knew were called for by the rules of the company. Only a moment after he looked both ways, the engine with the snow plow came round the curve without sounding the whistle or ringing the bell, coasting down a grade of sixty feet to the mile with steam shut off, and he was struck by it or by the snow it threw off.

It appeared that the foreman had told the plaintiff with other employees the day before the accident, to look out for themselves and keep out of the way of trains, and that a fellow workman had given him the same warning that afternoon.

The defendant asked the presiding judge to order a verdict for the defendant on the ground that the plaintiff was not in the exercise of due care.  This was refused, and a verdict was found for the plaintiff.

We are of opinion that the defendant's exceptions to the refusal to give that ruling must be sustained.

By the nature of his employment a section hand on a steam railroad must look out for passing trains, and such is the settled law of the Commonwealth.  *Shepard* v. *Boston & Maine Railroad,* 158 Mass. 174.  *Lynch* v. *Boston & Albany Railroad,* 159 Mass. 536.  *St. Jean* v. *Boston & Maine Railroad,* 170 Mass. 213.  *Jean* v. *Boston & Maine Railroad,* 181 Mass. 197.  *Dolphin* v. *New York, New Haven, & Hartford Railroad,* 182 Mass. 509.  See also *Shea* v. *Boston & Maine Railroad,* 154 Mass. 31.  The rule of law is the same elsewhere.  *Aerkfetz* v. *Humphreys,* 145 U. S. 418.  *Pennsylvania Railroad* v. *Wachter,* 60 Md. 395.  *Carlson* v. *Cincinnati, Saginaw & Mackinaw Railroad,* 120 Mich. 481.  This was enforced in the case at bar by Rules 26 and 739 of the defendant railroad, and by a caution to that effect given to the plaintiff by his foreman the day before the accident and by a fellow workman on the very day in question.

The plaintiff however contends that the jury were warranted in finding for him; that they were warranted in finding that his work was such that he had to stand between the tracks and to turn his back to a train coming on the east bound track; that he had a right to rely on the whistle and the bell required by Rules 95 b and 705 to warn him of a train on that track, and if not he used his eyes so far as his work admitted of his doing so.

We are of opinion that the plaintiff is right in his contention that the evidence warranted a finding that he had to stand between the two tracks.  But we are of opinion that he was bound to look for trains coming from the west as well as for trains coming from the east.  We see no reason why the plaintiff could not have stood at a right angle to both tracks in place of facing the west bound track and turning his back on the east bound.  If he had done so he could have kept an eye out for trains coming in either direction.

Rules 705 and 95 b were not made for the protection of section men, and he had not the right to rely on them that he would

have had if they had been imposed as a duty on those in charge of the train to be performed for his benefit. The most that can be said of the rules requiring an extra train to whistle before a curve and requiring all trains to ring the bell on passing a station is that they are "admissions of what precautions were proper, and so far as they may have led those to whom they were communicated to expect conduct in accordance with them," as was said in *Shepard* v. *Boston & Maine Railroad*, 158 Mass. 174. But it is settled that they did not excuse the plaintiff from using his eyes. *St. Jean* v. *Boston & Maine Railroad*, 170 Mass. 213. See also in this connection *Wheelwright* v. *Boston & Albany Railroad*, 135 Mass. 225; *Sullivan* v. *Fitchburg Railroad*, 161 Mass. 125; *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532, 535. It is also settled that the fact that the plaintiff had to bend over to do his work did not excuse him from using his eyes. *Lynch* v. *Boston & Albany Railroad*, 159 Mass. 536. *St. Jean* v. *Boston & Maine Railroad*, 170 Mass. 213.

The plaintiff was not entitled to go to the jury on the issue that he exercised due care in using his eyes. He testified that he looked both ways just a moment before he was struck. Whatever just a moment might be found by a jury to mean under other circumstances, it could not be found to mean that the plaintiff looked in time to see the snow plow coming from around the curve just west of Wachusett station or after it came round the curve. There was no evidence at the trial as to the speed at which the snow plow was coming. The plaintiff cannot be taken to have looked at the time he ought to have looked.

The plaintiff has placed great reliance on *Murran* v. *Chicago, Milwaukee & St. Paul Railway*, 86 Minn. 470. The question of the plaintiff's due care in that case depended upon whether the plaintiff was excused from using his eyes by the presence of a third person on whom he had a right to rely for warning, as was the case in *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532. In the case at bar he was relying on a warning from the engine and on that alone.

*Exceptions sustained.*