ELLEN C. SHANNON, administratrix, *vs.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

Middlesex.   March 13, 1913. — May 21, 1913.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & DE COURCY, JJ.

*Negligence,* In a railroad yard.

In an action against a railroad corporation to recover for the conscious suffering and death of one employed as a lamp trimmer and track walker in a yard of the defendant, it appeared that the decedent had been so employed for three weeks before the accident, that he had worked alone, managing his work in his own way without the superintendence of a foreman, and that he had worked in the yard at various times for a number of years in a section gang. While at work on his knees cleaning a switch lamp near to a track in a space four feet wide between the track and the switch stand, he was struck by a passing train and received injuries from which he died. A curve of the track and cars on an adjoining track caused the train to be hidden from view to one in an upright position as it approached, but one stooping could have looked under the cars and have observed it when three hundred feet distant. The decedent knew that the train might pass at any moment. He never gave an account of the accident and there were no eyewitnesses to it. *Held,* that the action could not be maintained because there was no evidence that the decedent at the time of the accident was in the exercise of due care.

DE COURCY, J.   This action is brought under the provisions of St. 1909, c. 514, §§ 127, 128, to recover damages for the conscious suffering and death of the plaintiff's intestate, William Shannon. The defendant operated under a lease a single track freight railroad, known as the Grand Junction Railroad, between Chelsea and Somerville; and Shannon was a lamp trimmer and track walker in its employ. His work included the lighting, extinguishing and filling of the thirty-four switch lamps in the section between East Cambridge and a point in Everett known as the Commonwealth switch; and he had been doing this for three

weeks immediately preceding the accident and for three months in the fall of 1909. For a number of years he had worked at different times in the section gang that had charge of the tracks and lights on this portion of the Grand Junction branch.

On April 4, 1910, at about 10.51 A. M., Shannon was struck by an engine of the defendant while he was trimming and filling a lamp near the Commonwealth switch. This switch was about four feet from the southerly rail of the main track, and five hundred and eighty-six feet west of the Broadway overhead bridge. It rested upon two ties or sills that were nine inches apart, and about sixteen feet in length. South of the main track, but not connected with the switch, was a side track, used for the storage of freight cars, the centre lines of the two tracks being twelve feet distant one from the other. At the time of the accident there were cars on this siding, so located that they would obstruct the view in the direction of the bridge; but the plaintiff's evidence was that the intestate, looking under the freight cars, could have seen some part of an approaching engine when it was three hundred feet away. Just before he was struck Shannon was seen on his knees, on the end of the ties of the main track, between the main track and the switch stand, facing toward the Broadway bridge, with his head bent over and the switch lamp in front of him. He was struck over the left eye by the cylinder of the engine and knocked down, sustaining a fracture of the skull.

Shannon himself never gave any story of the accident, and there were no other eyewitnesses, except that the fireman and a brakeman saw him a moment before he was struck. The presiding judge * directed a verdict for the defendant, and the plaintiff duly excepted.

Upon the facts presented the plaintiff failed to show any evidence that would warrant the jury in finding that her intestate was in the exercise of due care. He knew that a train might be expected at almost any time, yet in trimming the lamp he needlessly took a position so near the main line track that his body was within the line of motion of any passing engine, and so far as appears he neither looked nor listened for approaching trains. He was free to manage his work in his own way, without the su-

---

* *Morton,* J.

perintendence of any foreman, and there was no one on whom he could rely to give warning of the approaching engine, yet on the evidence he took no precaution to insure his own safety, and there is nothing shown to justify his failure to do so. *Morris* v. *Boston & Maine Railroad,* 184 Mass. 368. *Blute* v. *New York, New Haven, & Hartford Railroad,* 195 Mass. 395. *Porter* v. *New York, New Haven, & Hartford Railroad,* 210 Mass. 271, and cases cited.

As we are of opinion that the trial judge rightly ruled that the plaintiff's intestate contributed to the accident by his own lack of due care, it is unnecessary to consider whether there was evidence for the jury of the defendant's negligence.

*Exceptions overruled.*

*S. C. Darling,* for the plaintiff.

*G. L. Mayberry & L. A. Mayberry,* for the defendant, were not called upon.