MICHELE LAPORTA *vs.* NEW YORK CENTRAL RAILROAD COMPANY.

Suffolk.    March 27, 1916. — May 16, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Negligence,* Licensee, Invited person, Wanton and reckless misconduct, Railroad.

Where an employee of a contractor with the acquiescence of a railroad corporation enters upon its property for the purpose of crossing a track to borrow a tool for his employer from the corporation and is struck and injured by a locomotive engine, he cannot recover in an action of tort against the corporation for his injuries so received without proving that his injuries were caused by wanton and reckless misconduct of the defendant or its employees.

One who enters upon premises of another on business of his own and with a reasonable expectation of gratuitous favors to be given to him there by the owner of the premises does not have the rights of an invited person as distinguished from those of a licensee.

TORT for personal injuries alleged to have been sustained by the plaintiff from being struck by a railroad train of the defendant while he was at work in the employ of the Hugh Nawn Contracting Company close to the defendant's railroad track near an overhead bridge which crossed the track at a curve thereof, the declaration alleging that the plaintiff was at work for his employer on the defendant's premises by the invitation or with the knowledge and consent of the defendant or by the invitation or with the knowledge and consent of the defendant corporation

that the Hugh Nawn Contracting Company and its employees should then work on or within the defendant's premises. The defendant was alleged to have been negligent by reason of the speed of the train, a failure to ring the bell or sound the whistle on the locomotive, whereby it came suddenly and swiftly from under a bridge that concealed its approach, and a failure to warn the plaintiff by signal or otherwise of the danger. Writ dated August 27, 1912.

In the Superior Court the case was tried before *Brown*, J. It appeared that the Hugh Nawn Contracting Company was engaged in filling land of the Commonwealth on Charles River, north of and adjoining the defendant's location west of the Essex Street Bridge, with gravel loaded at the defendant's Essex Street yards and hauled in cars propelled by the defendant's locomotives on tracks not built nor controlled by the defendant from the Boylston Street subway to a switch at Cottage Farm whence they were sent back and delivered to the contracting company upon the temporary tracks being used for its work.

Other evidence is described in the opinion.

At the close of the plaintiff's evidence a verdict was ordered for the defendant; and the plaintiff alleged exceptions.

*J. W. Pickering,* (*J. Vecchioni* with him,) for the plaintiff.

*G. L. Mayberry,* (*L. A. Mayberry* with him,) for the defendant.

PIERCE, J. Assuming, but not deciding, that the testimony offered by the plaintiff and excluded by the presiding judge upon the objection of the defendant should have been received, and that the plaintiff's several offers of proof are incorporated as evidence in the report, it could be found by the jury that the defendant undertook to furnish, and did furnish, steel and ties to the plaintiff's employer for its use upon land adjacent to the location of the railroad of the defendant and not owned or controlled by the defendant; that the tracks of the railroad were between the place where the steel and ties were deposited by the defendant and the land upon which the employer of the plaintiff was expected to use them; that the defendant knew that the employer of the plaintiff and his men had to cross the railroad tracks to reach the land upon which the steel and ties were to be used and were used, and that no objection was raised thereto; that the defendant owned and kept in its tool house, which was near the

Essex Street Bridge and across the tracks from the land where the employer of the plaintiff was doing work, certain tools and implements such as crowbars, bars, jacks, push cars, etc.

There is no evidence that the defendant undertook to furnish to the employer of the plaintiff any tools or implements; nor is there any direct evidence that the keeper of the tool house had authority to permit the use of tools or implements by any one other than a servant or employee of the defendant.

The jury, however, reasonably might find that the defendant had knowledge that its keeper of the tool house lent its tools and implements to the servants and employees of the plaintiff's employer, as needed in the prosecution of their work, and might infer from all the circumstances that the defendant sanctioned, if it had not directed, the action of the keeper.

It also could be found that immediately before the accident the plaintiff and another, by the direction of their boss, crossed the tracks of the railroad of the defendant to fetch a jack; that they found one owned by the defendant "at a place opposite the coal sheds, about forty paces from the wooden bridge, beside the rail nearest the river, of the outer track, on which trains came from Boston." The plaintiff testified: "We stooped down, and we were going to pick it up and put it on our shoulders. I looked back up and down to see if any train was coming. Then we started to pick up the jack to put it on our shoulders. Then the engine came out so sudden and struck me on the side and knocked me down."

The evidence warranted a finding that the whistle was not blown, nor the bell rung, nor other warning given of the approach of the train as it came out from the bridge. There was no evidence that it was customary to give warning of the approach of trains at this point, or that the train was run in any other than the usual way; and it did not appear how far a train coming down the Grand Junction Branch of the Boston and Albany Railroad main track could be seen by one standing where the plaintiff stood.

We need not determine whether the plaintiff's employer and the employer's servants had the rights of one acting on invitation or of one exercising a license during the time they were engaged in the removal of the steel and ties from the defendant's premises, as the accident did not happen in the course of such work.

The plaintiff contends that his employer and the defendant had mutual interests in the general transportation of the gravel, and in its delivery; that it was to their common interest to push forward the work expeditiously, and that the loan of tools and the entry upon the location of the railroad to get and to return them was in furtherance of that interest and, therefore, upon an implied invitation. This contention has no basis of fact in the reported testimony.

Eliminating this contention, the plaintiff's case rests necessarily upon the proposition that a person who enters upon the premises of another on business of his own, with reasonable expectation of gratuitous favors, has the rights of an invitee as distinguished from those of a licensee. This is not the law. See *Wheelwright* v. *Boston & Albany Railroad,* 135 Mass. 225; *Plummer* v. *Dill,* 156 Mass. 426; *Shea* v. *Gurney,* 163 Mass. 184; *Hillman* v. *Boston Elevated Railway,* 207 Mass. 478; *O'Brien* v. *Union Freight Railroad,* 209 Mass. 449.

There is no contention that the acts of the defendant were intentionally injurious to the plaintiff, or wanton and reckless.

It follows that the ruling was right, and by the terms of the report * judgment for the defendant is to be upon the verdict.

*So ordered.*

* By *Brown,* J., before whom the case was tried and who, at the close of the plaintiff's evidence, ordered a verdict for the defendant.