GEORGE PAPANDRIANOS, administrator, *vs.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

Suffolk.    January 8, 15, 1923. — March 1, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence,* Causing death, Employer's liability, Railroad.    *Evidence,* Presumptions and burden of proof, Matter of conjecture, Of custom, Competency.

At the trial of an action by an administrator against a railroad corporation for causing the death of an employee, there was evidence tending to show that the plaintiff's intestate had been employed for four months in a freight yard of the defendant separated from main line tracks by a space about twelve feet wide; that after his work he had returned to a tool house on the twelve foot space, had left his tools, and had been dismissed by his foreman; that he lived at a camp beyond the freight yard on the side opposite the main line tracks and that the defendant had provided a safe way to get to the camp across the freight yard. His dead body was found on one of the main line tracks, where he had been struck by a train of the defendant travelling at the rate of forty-five miles an hour shortly after five o'clock in the afternoon of a day in December. There was no eyewitness to the accident. There was no rule of the defendant or custom requiring the blowing of a whistle or the ringing of a bell at that point, and neither was done. There was no evidence that the speed of the train was excessive at that point. Neither the engineer nor the fireman on the engine of the train saw the intestate. A verdict for the defendant was ordered. *Held,* that

(1) The question, what was the intention of the intestate in being on the main track, on the evidence was a matter of conjecture;

(2) There was no evidence warranting a finding that the intestate was invited by the defendant to be on the main track, and he was there at his own peril;

(3) There was no evidence of negligence of the defendant.

Evidence at the trial of the action above described tending to show a custom of the employees of the defendant to cross the main line tracks to reach a nearby station was inadmissible without further evidence to show that the custom was known to or was acquiesced in by the defendant or any of its officers, especially in view of the fact that it appeared that the defendant had provided for its employees a safe means of leaving the yard.

Evidence, offered at the trial of the action above described, to show that the de-

fendant had violated a rule of the interstate commerce commission relating to headlights, was incompetent because it appeared that, at the time of the accident, the rule was not in effect as to the engine in question.

Evidence, at the trial above described, tending to show that the headlight of the engine in question permitted the engineer to see objects about three hundred feet ahead and that he did not see the intestate, did not warrant a finding that the headlight was insufficient, especially in view of the fact that the manner in which the intestate came upon the track was left wholly to conjecture.

TORT for causing the death of Athanasios Papandrianos, the plaintiff's intestate.  Writ dated December 12, 1918.

In the Superior Court, the action was tried before *Fessenden,* J. Material evidence is described in the opinion.  At the close of the evidence, upon motion by the defendant, a verdict was ordered in its favor; and the plaintiff alleged exceptions.

*E. H. Savary,* for the plaintiff.

*L. A. Mayberry,* (*W. F. Levis* with him,) for the defendant.

CROSBY, J.  This action is brought to recover the penalty prescribed by St. 1906, c. 463, Part I, § 63, as amended by St. 1907, c. 392 and St. 1912, c. 354 (now G. L. c. 229, § 3) for the death of the plaintiff's intestate, who was a section hand in the employ of the defendant.

The accident occurred about a quarter past five o'clock in the afternoon of December 14, 1917, in that part of Boston known as Allston.  At this place the defendant's Beacon Park Yard is about twelve feet north of the main line of the railroad; there are four main line tracks running practically east and west; these tracks are numbered 1, 2, 3 and 4, the most northerly being No. 1, which is a west bound track; the most southerly being track No. 4.  There is an open space about twelve feet wide between track No. 1 and the nearest or most southerly track of the freight yard, which is known as track No. 6; the Beacon Park freight yard is adjacent to and north of the main line tracks at this point.  On the day of the accident, the deceased had been engaged with others in removing snow from the switches in the freight yard, and shortly before five o'clock he and his fellow workmen quit work and returned to the tool house, which is located at the east end of the twelve foot space between tracks No. 1 and No. 6, and is at the south side of the freight yard; he was given permission by the section foreman to go home; he lived at a camp located at the northerly side of the yard; he left the tool house

about 5:15 o'clock and was not seen again; his body was found fifteen or twenty minutes later lying near the main line track No. 3.

There was evidence from which it could be found that he was struck by a regular west bound train which left the South Station on track at 5:05 P.M.; that neither the engineer nor fireman of the train saw him on or near the track. The whistle on the engine was not blown, nor was the bell rung at that point; nor was there any rule of the company or practice requiring that it should be done. The train was travelling about forty-five miles an hour; there was no evidence that the speed was unusual or that there was any rule regulating the speed of trains at that place, and there was no evidence of a custom to give any signal at that point. At the place where the body was found there is a curve in the track to the north. There was evidence that the usual and most direct way to go from the tool house to the home of the deceased, was up an open space in the yard in a northerly direction, the tool house and the camp both being north of the main tracks. It was unnecessary for the deceased to go upon the main tracks to reach his home, or to leave the premises of the defendant; his course across the main tracks at the time he was killed, was in a southerly or westerly direction, while the way to the camp was in nearly an opposite, or a northerly direction; there was no evidence that he travelled in a way ever used by any one in going from the tool house to the camp. It is suggested by the plaintiff that the deceased was going in the direction of the Allston station, along the tracks presumably "to take a train for Boston;" whether that was his intention is purely a matter of conjecture without evidence to support it. While there was evidence that it was a common practice for the men who worked in the freight yard after finishing their work at night to walk toward the Allston station from the yard in the open space between the tracks No. 1 and No. 6, it did not appear that this practice was known to or acquiesced in by the defendant or any of its officers. Where the railroad company has provided a safe and proper place for its employees to leave its premises, an employee cannot be deemed to have been invited to go by some other route travelled by others, even with the knowledge of the company. *Legge* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 88, and cases cited. *Hyams* v. *Boston Elevated Railway,* 216 Mass. 560.

The case at bar is distinguishable from *Hanks* v. *Boston & Albany Railroad*, 147 Mass. 495, *Chenery* v. *Fitchburg Railroad*, 160 Mass. 211, *French* v. *Boston & Maine Railroad*, 230 Mass. 163, cited by the plaintiff, and similar cases.

Besides, there was evidence that the section foreman under whom the deceased worked told the men to keep off the main line tracks. The evidence shows that the company had provided a safe and proper place for the deceased to go to his home, either by means of the open space between the yard and the main line tracks, or by the open space along track No. 12, through the yard; if he had used either he would not have been obliged to enter upon the main line tracks. In the case of *Flaherty* v. *New York Central & Hudson River Railroad*, 211 Mass. 570, cited by the plaintiff, it could have been found that the only permissible way to reach the station, where the employee had to go to leave his tools, was the path he took when struck, which distinguishes that case from the facts in the present case. If, as the plaintiff presumes, the deceased was intending to go to the Allston station to take the train for Boston, and he saw fit to cross the main tracks to reach the station, he did so at his peril; he had worked in the yard for four months previously, and it is manifest that he not only knew the location of the main tracks, but was familiar with the danger of going upon them. By the nature of his employment he was required to look out for passing trains. Such is the settled law of the Commonwealth. *Morris* v. *Boston & Maine Railroad*, 184 Mass. 368, and cases cited.

The evidence offered by the plaintiff showed that the train was operated in the usual way; that its speed was not excessive at that place; that no warning was required to be given; and it does not appear that the deceased was seen by the engineer or fireman, or that they should have anticipated that any one would be on the main tracks at that time. We are of opinion that neither the speed of the train nor the failure to give any signal of its approach in the absence of any custom to give such warning, *Howard* v. *New York, New Haven & Hartford Railroad*, 236 Mass. 370, was evidence of negligence. *Lynch* v. *Boston & Albany Railroad*, 159 Mass. 536. *Shannon* v. *New York Central & Hudson River Railroad*, 214 Mass. 459. *Laporta* v. *New York Central Railroad*, 224 Mass. 100. *Gillis* v. *New York, New Haven & Hartford*

*Railroad,* 224 Mass. 541.    *Great Northern Railway* v. *Wiles,* 240 U. S. 444.

The exception to the exclusion of the question put to the witness Chaddock, by whom the plaintiff offered to show that the men when leaving their work had been in the habit of walking along the main tracks between the yard and the Allston station and that no official of the defendant had forbidden them to do so, cannot be sustained; there is no evidence that any officer of the defendant knew of such practice if it existed; and if it had been known it would not be evidence of any express or implied invitation, for the reasons previously stated.

This is not a case where the jury could have found that the engineer could have seen the plaintiff's intestate on the track and have stopped his train in time to have avoided the accident, as was held in *Clapp* v. *New York, New Haven & Hartford Railroad,* 229 Mass. 532, 536.

The contention of the plaintiff that the defendant should have had on its locomotive a headlight which would have been sufficient for objects to be seen at greater distances than were visible by the use of the headlight on this engine, cannot be sustained. The only evidence concerning the power of the headlight came from the defendant's general superintendent in answer to interrogatories propounded and offered by the plaintiff. He testified that on such information as he had been able to obtain, he could say that a person in the cab could see a dark object as large as a man of average size standing erect at the time of day the intestate was struck, if the atmosphere was clear, about three hundred feet; although he also stated that he was unable to say how far it would have been possible for a person in the cab to have seen the intestate at that time and place; there was no evidence as to whether the headlight would show such an object at a greater or lesser distance.

The plaintiff offered in evidence a certified copy of an order issued by the Interstate Commerce Commission dated December 26, 1916, by which it appeared that its locomotives should be equipped the first time they were shopped for general or heavy repairs after July 1, 1917, with a headlight sufficient to see such an object as above described at a distance of at least eight hundred feet. It appeared that this locomotive was so shopped on

November 3, 1917; but there is no evidence that it was so equipped at that time. It also appeared that on September 22, 1917, the previous order was modified by providing that such change in headlights should be made the first time engines were shopped for general or heavy repairs after January 1, 1918; there was, therefore, no violation of the order as amended, as the time for making the change had not expired on December 14, 1917, the date of the accident. There was no evidence that the headlight was not suitable for use, nor that if a more powerful light had been on the engine the accident would have been avoided; and nothing to show whether the plaintiff was on the track when struck or was walking across it, or whether he stepped from a place of safety directly in front of the train or suddenly moved so near it as to be struck; nor does it appear that if he had been in sight of the engineer that the train could have been brought to a stop in time to have avoided striking him. It follows that the defendant could not have been found to be negligent in not having equipped its engine with a different or more powerful headlight. *Hamilton* v. *Boston, Revere Beach & Lynn Railroad,* 240 Mass. 458.

As there was no evidence which warranted a finding of negligence, the trial judge rightly ruled that the plaintiff could not recover. It therefore becomes unnecessary to consider the other grounds of defence argued and relied on by the defendant.

*Exceptions overruled.*