MARGARET A. LALLY, administratrix, *vs.* A. W. PERRY, INC.

Suffolk.   November 13, 1931. — December 3, 1931.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Negligence,* Invited person, Licensee, Of person in control of real estate.

At the trial of an action of tort by an administrator for the death of his
intestate, there was evidence that the defendant was the owner of a
building containing passenger and freight elevators in the control of
the defendant; that one of the freight elevators opened through the
wall of the building onto a passageway at about the height of the
tailboard of a truck, with an iron platform extending from the outer
face of the wall to the elevator shaft; that there was no step to the
opening; that the plaintiff's intestate came to the building with par-
cels to deliver to five tenants therein and, while attempting to get up
onto the platform, fell into the elevator well and was killed by reason
of defects in the elevator gate and platform resulting from the de-
fendant's negligent failure to keep them in repair; that, in attempting
to enter the building in this manner, the intestate was doing as he
and many others were accustomed to do; and that two of the tenants
for whom the intestate had parcels were under leases exempting the
defendant from liability for injuries sustained on the premises, while
three were tenants at will respecting whom there was no evidence of
an agreement with regard to the freight elevators.  There was no evi-
dence of gross negligence nor of wilful, wanton or reckless misconduct
on the part of the defendant.  *Held,* that
     (1) The evidence did not warrant a finding that the defendant
invited his tenants or the public to use the opening to the freight
elevator as a means of entrance to the building: its obvious intended
use was for placing freight on the elevator, either from a vehicle
drawn up to the entrance or by lifting it from the ground to the plat-
form and pushing it over to the elevator;
     (2) The intestate when killed was at most a mere licensee with
respect to the defendant;
     (3) The plaintiff could not recover.

TORT for the conscious suffering and death of the plain-
tiff's intestate.  Writ dated February 18, 1928.

The action was tried in the Superior Court before *W. A.
Burns,* J.  Material evidence is stated in the opinion.  The
judge denied a motion by the defendant that a verdict be
ordered in its favor.  There was a verdict for the defendant
on the counts for conscious suffering and for the plaintiff

in the sum of $7,089 on the counts for death. The defendant alleged exceptions.

*G. B. Rowell, (C. F. Albert* with him,) for the defendant.

*E. D. Gallagher, (D. J. Gallagher* with him,) for the plaintiff.

WAIT, J. The defendant was in control of buildings numbered 97 Summer Street, 24 Kingston Street and 116 Bedford Street, in Boston, which, through the removal of inside walls, practically constituted and were used as one building. Tenants were served by passenger and freight elevators which were in the control of the defendant. One of the freight elevators opened through the wall of 116 Bedford Street upon a passageway running from Kingston Street. The opening was at the height of the tailboard of a truck above the level of the passageway. An iron plate extended from the outer face of the wall to the elevator shaft. Witnesses varied in stating its width from one foot to four feet. The plaintiff's intestate, Lally, in climbing up to this platform, placed his hands on the sides of the opening, put his right foot on the iron platform, caught his left foot in the uneven and broken edge of the iron which had become raised above the brick on which it was designed to rest, and fell into the elevator well, receiving injuries from which he died. After verdicts for the defendant upon counts for conscious suffering, and for the plaintiff upon counts for the death, the case is before us upon exceptions of the defendant to the refusal of the trial judge to direct verdicts in its favor, to his refusal to give certain requests for instructions, to rulings with regard to evidence and to improper argument. The declaration did not charge gross negligence nor wilful and wanton conduct; and no evidence of either appears.

In addition to what has been stated, there was evidence which would support findings that Lally, driver of a truck of the American Express Company, entered the alleyway from Kingston Street and parked his truck near the elevator opening in a usual place. He had parcels to deliver to five tenants at 116 Bedford Street and 24 Kingston Street. He alighted, walked to the elevator opening, found the gates

open, and was getting up on the platform as described, when he caught his foot and fell. The well was dark. He was familiar with the place. He had called there two or three times a week for a considerable period, and, in getting up on the platform, he was doing as he and many others were accustomed to do. The gate was up, which, if it was working properly, indicated that the elevator was at the landing. Whether he was in the exercise of due care was, we think, properly for the jury. *Wright* v. *Perry,* 188 Mass. 268. There was evidence that the gate of the elevator was not working properly, and that the iron platform was not reasonably safe for use; that complaints had been made to the janitor in charge for the defendant, and that promises to remedy the troubles had been made. There also was testimony that in the preceding March official inspection had shown the gate and platform to be in good condition. The president of the defendant testified that they had never been out of repair. This would support findings that the premises were in good condition when they were leased, years before, to the various tenants, and free from the defects existing at the time of this injury; and that there had been negligence in failing to keep the gate and platform in the condition of the time of letting and reasonably safe for the use for which they were intended.

The serious question presented is whether the defendant owed any duty to the intestate other than to refrain from gross negligence or wilful and wanton conduct producing injury to him. Since neither was charged or proved, the liability, if any, depended upon the existence of a duty owed to him to use ordinary care to keep the elevator and its approaches in the building reasonably safe and convenient for his use. Under our decisions no such duty was owed by the defendant if the intestate stood only in the position of a mere licensee upon the premises. Unless he was invited, expressly or impliedly, by the landlord to come upon the premises, or was there under a right of a tenant to his presence, he was in the position of a mere licensee. *Pope* v. *Willow Garages, Inc.* 274 Mass. 440. *Murphy* v. *Huntley,* 251 Mass. 555. *Creeden* v. *Boston &*

*Maine Railroad,* 193 Mass. 280. The uncontradicted evidence showed that there were five tenants in the building served by the elevator with whom he had business to transact. Two of these held written leases. Three were tenants at will. All had been in the building for years. The written leases made no specific reference to the freight elevators. The lease to Crosby Bros. & Co. provided: "No charge shall be made by the Lessor for . . . use of elevators to or from the demised premises, all of which it is the intention of the Lessor to furnish in such manner and at such times as are usual in buildings of a similar class . . ."; and contained a covenant by the lessee "that the Lessor or those having his estate in the premises shall not be liable to the Lessee or any other person, for any injury, loss or damage to any person or property on the premises or the appurtenances or approaches thereto." The lease to Armstrong provided that the lessor "will, at his own expense, operate the passenger elevator in said building during reasonable business hours, for the use of the Lessee in common with the other tenants of said building"; and contained a covenant in the language of the Crosby lease (except that it omitted the words "or the appurtenances or approaches thereto") on the part of the lessee that the lessor should not be liable for damage to person or property. The former leased a room on the fifth floor of 116 Bedford Street "known as the Shoe & Leather Building." The latter leased the second floor of the "Hunnewell Building" numbered 97 Summer Street and "extending through to 130 Bedford Street." Both annexed a copy of "Rules and Regulations" which contained nothing with reference to elevators other than that ". . . elevators . . . shall not be obstructed by" the lessee, or used "for any other purpose than for ingress and egress," and that tenants, their clerks or servants shall not "smoke tobacco in the elevators." No evidence of any express agreement between the lessor and the tenants at will with reference to the use of the freight elevators was introduced. We find nothing to support a finding that the lessor extended any general invitation to the public to use the

freight elevator opening on the alley from Kingston Street. The physical construction of itself negatives such invitation. No general entrance was there. The opening was obviously merely contrived for use with a freight elevator. There was no step at the alley level. Inference based upon the leases would confine the use to the tenants, and indicate the lessor's expectation that any use by others relying upon the tenant's right would impose no liability upon it. Neither express nor implied invitation from the lessor is made out. We have no doubt that an implied invitation to make use of a freight elevator may exist in appropriate circumstances; but such circumstances are absent here. *Wright* v. *Perry*, 188 Mass. 268.

It is manifest that the use of the platform and elevator contemplated was use from the body of the vehicle conveying the freight to or from the elevator, and not from the alley level. No tenant was authorized to use the opening as a means of entrance to the building from the alley level. One so entering was as to the landlord at best simply a licensee, if he were not a trespasser. As was pointed out in *Cerricola* v. *Darena*, 266 Mass. 267, 269, and cases cited, see also *Landers* v. *Brooks*, 258 Mass. 1, any invitation to use was limited to use in the manner obviously indicated by the surroundings. No doubt a person on foot might lift a parcel destined for a tenant from the ground to the platform and push it over to the elevator. If injured in so doing by a defect in the platform due to lack of care in maintaining the platform in safe condition, he might have a remedy against the landlord. But one who used this opening for entrance to the building, even if intending thereby to get at the elevator, would not be within any invitation extended by the landlord. Compare *Murphy* v. *Avery Chemical Co.* 240 Mass. 150, 154, *Murphy* v. *Boston & Maine Railroad*, 248 Mass. 78, 81, *Laporta* v. *New York Central Railroad*, 224 Mass. 100. Upon the facts of this case the plaintiff was not one to whom the defendant owed a duty to keep the platform and elevator safe, either as one of the public or as one deriving a right under a tenant by written lease or a tenant at will. The covenants of the

written leases would bar recovery by one deriving his right from lessees thereunder. *Telless* v. *Gardiner*, 266 Mass. 90, and cases cited. *Boudreau* v. *Johnson*, 241 Mass. 12. Compare *Clarke* v. *Ames*, 267 Mass. 44.

It follows that there was error in denying the defendant's motions for directed verdicts. What has been said renders unnecessary discussion of the other exceptions claimed. We find no reversible error. As the case has been fully tried, judgment for the defendant should enter pursuant to G. L. c. 231, § 122.

> *Exceptions sustained.*
> *Judgment for the defendant.*